David A. Cortman, GA Bar No. 188810*
dcortman@adflegal.org
Ryan J. Tucker, AZ Bar No. 034382*
rtucker@adflegal.org
Jeremiah J. Galus, AZ Bar No. 030469*
jgalus@adflegal.org
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020

Julie Blake, DC Bar No. 998723*
jblake@adflegal.org
Andrea Dill, DC Bar No. 1719500*
adill@adflegal.org
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Dean R. Broyles, Esq., CA Bar No. 179535
dbroyles@nclplaw.org
NATIONAL CENTER FOR LAW & POLICY
539 West Grand Ave.
Escondido, CA 92025
(760) 747-4529

Mariah Gondeiro, Esq. CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, Esq. CA Bar No. 337006
jfleischer@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
(951) 600-2733

*Admitted Pro Hac Vice
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHURCH OF COMPASSION**, a California Non-Profit Corporation, **DAYSPRING CHRISTIAN LEARNING CENTER**, a subsidiary of the CHURCH OF COMPASSION;<br><br>          Plaintiffs,<br><br>     vs. | Case No.:  3:23-cv-00470-AGS-WVG<br><br>**VERIFIED FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF:** |

1

**KIM JOHNSON**, in her official capacity as Director of the California Department of Social Services; **JESSIE ROSALES**, in his official capacity as Chief of the Child and Adult Care Food Programs, a division of the California Department of Social Services; **SEAN HARDIN**, in his official capacity as Acting Chief of the Child and Adult Care Food Programs, a division of the California Department of Social Services; **THOMAS VILSACK**, in his official capacity as Secretary of the U.S. Department of Agriculture; and **UNITED STATES DEPARTMENT OF AGRICULTURE**.

    Defendants.

**1) DEPRIVATION OF THE FREE EXERCISE OF RELIGION**

**2) DEPRIVATION OF THE FREEDOM OF SPEECH AND ASSOCIATION**

**3) STATE ESTABLISHMENT OF RELIGION**

**4) VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT**

**5) VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

## INTRODUCTION

1.     This Action brings facial and as applied challenges to new government mandates recently issued by the State of California Department of Social Services ("CDSS") and the U.S. Department of Agriculture ("USDA"), which bar houses of worship and religious organizations that maintain traditional religious beliefs regarding human sexuality from continued participation in the Child and Adult Food Care Program ("Food Program"). These religious beliefs were uncontroversial for more than 2,000 years and continue to be held by most major world religions. These new directives violate the Free Exercise, Free Speech, Free Association, and Establishment Clauses, as well as the Religious Freedom Restoration Act and Administrative Procedure Act.

2.     The Church of Compassion ("Church") and its Dayspring Learning Center ("Dayspring" or "Preschool") have been consistently, humbly, and compassionately loving their neighbors by identifying and meeting the needs of their community for more than two decades. El Cajon, California, where the Church and Preschool are located, has a large immigrant population and many of the families served by the Church and Preschool rely on governmental assistance. Dayspring serves all families and children, including several LGBTQ+ families who understand and appreciate the religious

2

VERIFIED FIRST AMENDED COMPLAINT

instruction their children receive at the Preschool and have no desire to force the Church to change its religious beliefs. But while the Church and Preschool serve all families, they will not teach or promote all messages.

3.     Yet by implementing their new mandates, Defendants seek to force the Church and Preschool to surrender their sincerely held Christian beliefs and practices regarding human sexuality, including their right to hire those with shared beliefs. Defendants demand that the Church and Preschool agree to fully comply with new "sexual orientation" and "gender identity" nondiscrimination provisions, including in their religious employment practices ("SOGI Rules"), or forfeit the right to receive generally available public funds used to feed needy children, including immigrants, in their community.

4.     Because the Church and Preschool's religious beliefs and practices conflict with the new SOGI Rules, Defendants unlawfully suspended them from the Food Program, effective December 29, 2022. Ironically, in the name of combatting discrimination, Defendants have excluded the Church and Preschool based solely on their religious character, beliefs, and exercise. This is antithetical to the First Amendment's promise of religious freedom and only hurts families and children.

5.     Defendants must be reminded that the U.S. Constitution remains the highest law in the land. The government does not have the authority to force religious institutions to compromise their deeply and sincerely held religious beliefs and practices about human sexuality, capitulate to the new SOGI Rules, or pressure religious groups and people to assimilate to conflicting sexual philosophies. Furthermore, a government's antidiscrimination interest does not justify "enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Carson v. Makin*, 142 S.Ct. 1987, 1996–99 (2022). Yet this is precisely what Defendants have done.

## PARTIES – PLAINTIFF

6.     Plaintiff Church of Compassion, Inc. ("Church") is a California Non-Profit Corporation and a Christian church organized exclusively for religious purposes. The Church is located in the city of El Cajon, California. The Church owns and operates the Dayspring Christian Learning Center, a Christian preschool and daycare program ("Dayspring").

## PARTIES – DEFENDANTS

7.     Kim Johnson is the Director of the California Department of Social Services. She is sued in her official capacity.

8.     Jessie Rosales is the Chief of the Child and Adult Care Food Programs, a division of the California Department of Social Services. He is sued in his official capacity.

9.     Sean Hardin is the Acting Chief of the Child and Adult Care Food Programs, a division of the California Department of Social Services. He is sued in his official capacity.

10.    Defendants Johnson, Rosales, and Hardin are referred to collectively as the "State Defendants."

11.    Defendant Thomas Vilsack is Secretary of the United States Department of Agriculture and responsible for the administration and implementation of policy within USDA, including investigating complaints, enforcing Title IX, abiding by religious exemptions, and administering the Food Program. His address is 1400 Independence Avenue, S.W., Washington, D.C. 20250. He is sued in his official capacity.

12.    Defendant United States Department of Agriculture (USDA) is a federal cabinet agency within the executive branch of the U.S. government under 7 U.S.C. § 2201–22, and 5 U.S.C. §§ 551 and 701(b)(1). USDA is "an executive department under the supervision and control of a Secretary of Agriculture." 7 U.S.C. § 2202. No Senate-confirmed official leads any of the subcomponents of USDA that enforce the Food

4

VERIFIED FIRST AMENDED COMPLAINT

Program or Title IX. The agency's address is 1400 Independence Avenue, S.W., Washington, D.C. 20250.

13.    Defendants Vilsack and USDA are referred to collectively as the "Federal Defendants."

## JURISDICTION AND VENUE

14.    This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 (42 U.S.C. § 1983), the Religious Freedom Restoration Act (42 U.S.C. § 2000bb *et seq*.), and the Administrative Procedure Act (5 U.S.C. §§ 553, 701–06).

15.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343, 1346(a), and 1361. The Court also has jurisdiction to review Defendants' unlawful actions and enter appropriate relief under the APA's cause of action, 5 U.S.C. §§ 553, 701–06.

16.    This case seeks declaratory, injunctive, and other appropriate relief under 5 U.S.C. §§ 705 and 706; 28 U.S.C. §§ 1343, 2201–02; 42 U.S.C. §§ 1983, 2000bb-1; Federal Rules of Civil Procedure 57 and 65; and the Court's inherent equitable powers.

17.    The court may issue temporary and preliminary injunctive relief and any other "necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

18.    This Court may award costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; the Religious Freedom Restoration Act, 42 U.S.C. § 1988(b); and 42 U.S.C. § 1988(b).

19.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

20.     The federal officials are subject to the APA, as are the state officials, who are in concert with USDA. 5 U.S.C. § 701(b); 5 U.S.C. § 551(1). Their actions, as described below, are final agency actions subject to judicial review.

21.     Relief is sought against Defendants, their officials, agents, employees, and all persons in active concert or participation with them, including their successors in office.

## FACTUAL BACKGROUND

I.   **Church of Compassion and Dayspring**

A.     **Plaintiffs' Religious Mission and Beliefs**

22.     The Church of Compassion is a non-denominational Christian church which maintains biblically orthodox religious beliefs and practices regarding human sexuality, as most Christian churches have faithfully maintained for the past two thousand years.

23.     The Church operates Dayspring, a religious preschool and daycare program, which is licensed to serve up to 112 children in the community.

24.     Dayspring teachers are required to subscribe to a statement of faith in the employee handbook and have religious and theological teaching responsibilities, including reading and explaining Bible stories to students. During chapel services, teachers lead the students in Christian songs worshipping God and pray with the students. A true and correct copy of Dayspring's employee handbook is attached hereto as **Exhibit A**.

25.     Parents who choose to send their children to Dayspring are on notice and understand that the preschool and daycare program is affiliated with the Church of Compassion and is operated as a Christian program. They are provided with a parent handbook which explicitly includes Dayspring's articles of faith and mission statement. A true and correct copy of Dayspring's parent handbook is attached hereto as **Exhibit B**. Specifically, parents are informed that children will be taught:

VERIFIED FIRST AMENDED COMPLAINT

The Bible is the Sovereign Word of God. Jesus Christ is the Son of God, born of the virgin Mary. Jesus died to atone for our sins. Jesus rose on the third day, lives today, and is coming again to receive those that believe and wait for His return. Salvation is obtained by grace alone through faith. The Holy Trinity includes the Father, the Son, and the Holy Spirit.

26.    Defendants also are on notice and aware that the Church and Dayspring are faith-based organizations. For instance, the Church provides a public Statement of Faith on its website and describes itself on its "About" tab as a "church that is Spirit Filled, centered upon the Word of God and is family oriented." On its website, Dayspring describes itself as the "Child Development Center of Church of Compassion" and links to the Church's website. Furthermore, CDSS acknowledges it has reviewed Dayspring's employee handbook, which also includes a statement of faith and clearly lays out the Christian religious beliefs and practices inculcated at Dayspring.

27.    The Church and Dayspring follow their religious beliefs—including those about human sexuality—in interactions with students and employees. They also do so in all preschool and daycare operations, including restrooms, dress codes, hiring, curricula, activities, and daily conversations.

28.    Dayspring thus maintains sex-separated bathrooms and dress codes for boys and girls based on their biological differences and cannot agree to use any child or employee's "preferred" pronouns that do not correspond to biological sex.

29.    The Church and Dayspring also only hire those who share and live out their religious beliefs, including their beliefs about human sexuality.

30.    El Cajon, California, where the Church and Preschool are located, is home to a large immigrant community. Many people living in the area are originally from Syria, Iraq and Mexico, among other nations. Approximately 28% of its residents were not born in the United States. The median income is comparatively lower than other areas of the State with approximately 19% of the population living below the poverty level.

31.     The Church and Dayspring have been consistently, humbly, and compassionately loving their neighbors by identifying and meeting community needs for more than two decades. Approximately 40% of the students attending the Preschool qualify for free meals under the Food Program and may be receiving some form of tuition assistance. The Preschool's participation in the Food Program is especially important for these needy families and children.

32.     The Preschool welcomes all families who understand and agree to participate in its faith-based program where Christian beliefs and values, including love, are inculcated and experienced. The Preschool does not discriminate against children based on the gender identity or the sexual orientation of student family members. In fact, there are several LGBTQ+ families whose children attend the Preschool. These families understand and appreciate the Christian education their children are receiving at Dayspring.

**B.      Plaintiffs' Participation in the Child and Adult Care Food Program**

33.     The Child and Adult Care Food Program ("Food Program") is a federal program that provides reimbursements for nutritious meals and snacks to eligible children and adults who are enrolled for care at participating child care centers, day care homes, and adult day care centers. The Food Program also provides reimbursements for meals served to children and youth participating in afterschool care programs, children residing in emergency shelters, and adults over the age of 60 or living with a disability and enrolled in day care facilities.

34.     The USDA administers the Food Program nationwide, providing funding to California and other states. For years, the California Department of Education ("DOE") administered the Food Program in California, but it is now administered by CDSS.

35.     Because an essential part of the Church and Dayspring's religious mission is to educate and love every child, they are committed to feeding their students, many of whom qualify for federal food aid.

36.     Families rely on Dayspring to provide both physical and spiritual nourishment to their children, and Dayspring serves balanced, nutritious meals with love and kindness every day during the school year and summer.

37.     The Church and Dayspring have successfully participated in the Food Program, with no legal issues to speak of, for nearly twenty years, through early 2022.

38.     As a result of its participation in the Food Program, in 2022 for example, Dayspring received approximately $3,500 to $4,500 a month to help cover food-related costs for indigent students in its daycare and preschool program.

39.     The Church and Dayspring treat every student with dignity and respect. They would never turn away a hungry child.

40.     To participate in the Food Program, the Church had to submit an annual application which includes signing Civil Rights Compliance paperwork each year.

41.     However, prior to 2022, the nondiscrimination statement Dayspring was required to sign did not include sexual orientation or gender identity ("SOGI").

## II.     Title IX of the Education Amendments of 1972

42.     In 1972, Congress enacted Title IX of the Education Amendments, 20 U.S.C. § 1681, to forbid education programs or activities receiving federal financial assistance from discriminating against persons based on their sex.

43.     Congress enacted Title IX to promote equal opportunities for girls. It was "enacted in response to evidence of pervasive discrimination against women with respect to educational opportunities, which was documented in hearings held in 1970 by the House Special Subcommittee on Education." *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 286 (2d Cir. 2004); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 523 n.13 (1982).

44.     Title IX thus focused on equal treatment and effective accommodations. Title IX regulations for instance require athletic opportunities to "effectively accommodate the interests and abilities" of girls and boys. 34 C.F.R. § 106.41(c).

9

VERIFIED FIRST AMENDED COMPLAINT

45.     When Title IX was passed over 50 years ago, "sex" was defined as "one of the two divisions of organic esp. human beings respectively designated male or female."[1] That meaning controls Title IX. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (when a term is not defined it should be given its "ordinary, contemporary, common meaning").

46.     Participation in the Food Program qualifies as "Federal financial assistance" so it subjects a school in all aspects to Title IX, including all school operations, restrooms, dress codes, hiring, admissions, curricula, activities, athletics, and daily conversations.

47.     Title IX applies institution-wide to "all of the operations" of the school— not just the lunch line. 20 U.S.C. § 1687.

48.     However, Title IX includes a robust religious exemption, which applies automatically by operation of statute. 20 U.S.C. § 1681(a)(3). Title IX does not apply to covered entities "controlled by a religious organization if the application of [Title IX] would not be consistent with the religious tenets of such organizations." *Id.*

## III.   Defendants' SOGI Rules

### A.   USDA's SOGI Rules

49.     USDA operates school meal programs, including the Food Program.

50.     USDA also administers, interprets, and enforces Title IX, and it investigates complaints and brings enforcement actions against program participants for Title IX violations. It also administers its own program of reviewing religious exemptions to Title IX.

51.     Secretary Vilsack has delegated authority to the Assistant Secretary for Civil Rights, 7 U.S.C. § 6918, "to enforce Title IX" and "to enforce related Executive Orders, Congressional mandates, and other laws," 7 C.F.R. § 2.25(a)(1)(iii) & (vi).

52.     Title IX is also enforced jointly by the USDA Food and Nutrition Service Civil Rights Division and by the USDA National Institute of Food & Agriculture Office

---

[1] Webster's New International Dictionary 2081 (3d ed. 1966).

VERIFIED FIRST AMENDED COMPLAINT

of Civil Rights and Equal Opportunity, both of which also collect, investigate, and adjudicate discrimination complaints, including by soliciting complaints from the public.

53.    Federal regulations require state program officials to assure compliance with Title IX at the application or award stage. 7 C.F.R. §§ 15a.115, 210.23, 225.3, 225.7.

54.    In 2021, with no prior notice or public comment, USDA posted on its website a "departmental regulation" redefining sex in Title IX to mean "Sex (including sexual orientation and gender identity)." Issued under its Title IX enforcement authority, USDA said that this "regulation applies to all programs and activities receiving Federal financial assistance from USDA Mission Areas and agencies." A true and correct copy of this departmental regulation is attached hereto as **Exhibit C**.

55.    Then, in May 2022, USDA's Food and Nutrition Service (FNS) sent a "Policy Update" to all state directors of USDA's food and nutrition service programs, including the Food Program. The update "clarifie[d] that prohibitions against discrimination based on sex in all FNS programs found in Title IX . . . prohibit discrimination on the basis of gender identity and sexual orientation." A true and correct copy of this policy update is attached hereto as **Exhibit D**.

56.    USDA justified this new interpretation by citing the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), as well as President Biden's Executive Order 13988, which claims *Bostock*'s reasoning applies to Title IX. Ex. D at 2.

57.    But *Bostock* held that terminating an employee "simply for being homosexual or transgender" constitutes discrimination "because of . . . sex" under *Title VII*, which governs employment. The Supreme Court assumed "sex" in Title VII "refer[s] only to biological distinctions between male and female," *Bostock*, 140 S. Ct. at 1739, and it did "not purport to address bathrooms, locker rooms, or anything else of the kind," *id.* at 1753. The Court even noted that "other federal or state laws that prohibit sex discrimination," such as Title IX, were not "before" it, and it declined to "prejudge"

whether its decision would "sweep beyond Title VII" to those other laws. *Id.* at 1737–38, 1753.

58.    Even so, USDA's "Policy Update" instructed all state agencies and program operators to "expeditiously review their program discrimination complaint procedures and make any changes necessary to ensure complaints alleging discrimination on the basis of gender identity and sexual orientation are processed and evaluated as complaints of discrimination on the basis of sex." Ex. D at 3.

59.    USDA also directed state officials to distribute the policy update "to local agencies, Program Operators and Sponsors, and all other subrecipients of Federal financial assistance." Ex. D at 3.

60.    It then instructed program participants to "direct questions concerning this memorandum to their State agency," not to USDA. Ex. D at 3.

61.    The "Policy Update" also included a cover letter to States and a Q&A document. The cover letter repeated many of the same points about immediate compliance by program participants. The Q&A document also said that religious exemptions were not automatic and that schools had to "request a religious exemption with the U.S. Department of Agriculture" under 7 C.F.R. § 15a.205 "by submitting a written declaration to the Secretary of Agriculture identifying the provisions that conflict with a specific tenet of the religious organization." True and correct copies of the cover letter and Q&A document are attached hereto as **Exhibit E** and **Exhibit F**, respectively.

62.    According to these documents, schools must post new "And Justice for All" posters and adopt new nondiscrimination statements that say, "In accordance with Federal law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), age, disability, reprisal or retaliation for prior civil rights activity." *See* Ex. F at 2.

63.    These documents ignored reliance interests and deferred all consideration of religious-liberty concerns to enforcement proceedings. It also denied the public, including the Church, the ability to have prior notice and to provide advance comments.

### B.    CDSS's SOGI Rules

64.    Under Director Johnson, the California Department of Social Services (CDSS) administers the Food Program at the state level.

65.    CDSS provides guidance, training, outreach, and technical support to schools operating the Food Program, and it ensures compliance with regulatory guidelines. CDSS reviews and approves applications, and it conducts periodic reviews to ensure that program sponsors and operators meet all Food Program requirements.

66.    Federal regulations require Director Johnson and her agency to assure compliance with Title IX. *See, e.g.*, 7 C.F.R. § 226.6(b)(4)(ii) (state agency must require approved institutions to sign a "Program agreement" stating that they will, among other things, "comply with all requirements of . . . title IX of the Education Amendments of 1972 . . .").

67.    Although CDSS has imposed additional state requirements for participation in the Food Program, USDA regulations make clear that such requirements must be consistent with federal requirements and "may not deny the Program to an eligible institution." 7 C.F.R. § 226.25(b).

68.    USDA guidance further explains that "[s]tate agencies may not deny an application, disallow meals that are otherwise reimbursable, assess an overclaim, declare a sponsor seriously deficient, or terminate a sponsor based solely on the violation of an additional State agency requirement." A true and correct copy of this guidance document is attached hereto as **Exhibit G**.

69.    State agencies also must receive written approval from USDA before implementing any additional state requirements, and they must provide "an assurance

that the proposed additional requirement will not deny access to eligible institutions and participants." Ex. G at 1.

70.   CDSS has imposed additional state SOGI Rules as a condition to participating in the Food Program.

71.   Specifically, CDSS requires compliance with California Government Code §§ 11135 and 11139.8, which prohibit discrimination based on sexual orientation and gender identity.

72.   By their plain terms, however, neither statute should apply to the Food Program.

73.   California Government Code § 11135 is concerned with programs funded exclusively by state dollars, not federal ones. The law states that "[n]o person in the State of California shall, on the basis of sex . . . or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." The law defines "sex" to include "gender identity and expression." *See* Cal. Gov't Code §§ 11135(c) and 12926(r)(2).

74.   And California Government Code § 11139.8 merely limits the ability of state officials to travel to states that, in California's opinion, do not adequately protect against sexual orientation and gender identity discrimination. The law says nothing about the Food Program and places no obligations whatsoever on private entities like Plaintiffs.

75.   Yet, as detailed below, CDSS has invoked these state statutes to exclude the Church and Dayspring from continued participation in the federal Food Program, in direct violation of federal law and the U.S. Constitution.

## IV.   CDSS Invokes Both the Federal and State SOGI Rules to Exclude Plaintiffs

76.    After assuming responsibility from the DOE for administering the Food Program, CDSS included new and different compliance language in the "Assurance of Civil Rights Compliance," Permanent Single Agreement ("PSA") form dated April 2022. A true and correct copy of this new form is attached hereto as **Exhibit H**.

77.    The new 2022 PSA required the Church and Dayspring to certify compliance with certain federal laws and regulations—including Title IX, USDA nondiscrimination regulations, and "the USDA Food and Nutrition Service (FNS) directives and guidelines"—"to the effect that no person shall be discriminated against on the basis of . . . sex (including sexual orientation and gender identity) . . . ."

78.    Because of the Church's orthodox religious beliefs regarding human sexuality, it was unable to comply with the PSA when it submitted its application for the 2022-2023 year. Specifically, Dayspring signed the PSA statement, but asked to remove the words "sexual orientation" and "gender identity" from the required nondiscrimination statement. A true and correct copy of Dayspring's 2022 Food Program application form is attached hereto as **Exhibit I**.

79.    In response, Defendant Jessie Rosales, Chief of the Child and Adult Care Food Programs, a division of the California Department of Social Services, submitted an ominous and threatening letter to the Church dated October 20, 2022 with the subject: NOTICE OF DENIAL OF APPLICATION AND DETERMINATION OF SERIOUS DEFICIENCY ("CDSS Notice"). A true and correct copy of this CDSS Notice is attached hereto as **Exhibit J**.

80.    The CDSS Notice explained that the Church and Dayspring's application for participation in the Food Program was denied because Plaintiffs had refused to agree to sign and comply with the PSA's SOGI nondiscrimination provisions.

81.    Defendant Rosales' letter states, "While the Legislature strongly supports religious freedom, it has also explicitly stated that religious freedom should not be a

VERIFIED FIRST AMENDED COMPLAINT

justification for discrimination. . . . To that end, the Legislature enacted California Government Code sections 11135 and 11139.8, which prohibit discrimination based on gender identity and sexual orientation in any program or activity that is operated or administered by the State, is funded by the State, or receives State financial assistance." Ex. J at 1.

82. The CDSS Notice then asserted that "the Church of Compassion's operation of [the Food Program] is in violation of State law and constitutes one or more serious deficiencies as specified in Section 226.6(c)(2)(ii) of Title 7 of the Code of Federal Regulations." Ex. J at 1.

83. The CDSS Notice proceeds to note two specific "violations."

84. The first alleged "violation" was that the Church's application requested a modification of the PSA's new nondiscrimination clause, specifically excluding "gender identity" and "sexual orientation" from being included in the definition of "sex." *See* Ex. J at 1.

85. The second alleged "violation" was that the Church and Dayspring "requires all employees to read and abide by a staff handbook that specifically disallows 'lesbian, gay, bisexual, and transgender lifestyles.'" *Id*.

86. Completely ignoring the reality that the U.S. Constitution is the supreme law of the land, trumps contrary state and federal laws, and specifically guarantees Plaintiffs' religious free exercise and free speech, Defendant Rosales improperly concluded the Church violated state law—namely, California Government Code sections 11135 and 11139.8—and was "serious[ly] deficien[t]" under federal law for failing to "ensure compliance with civil rights requirements."

87. Defendant Rosales also wrongly stated that the Church's employment practices violated Title VII, even though the Church plainly qualifies for Title VII's religious exemption and there is no USDA rule or regulation that conditions Food Program participation on compliance with Title VII.

VERIFIED FIRST AMENDED COMPLAINT

88.   The CDSS Notice demanded that the Church and Dayspring, in order to continue participating in the Food Program, could take corrective action within 15 days of receipt of the CDSS notice only by: (1) signing the PSA agreeing to comply with the new SOGI Rules without modification; (2) attesting to compliance with all state and federal laws "including, but not limited to, Government Code sections 11135 and 11139.8 and Title VII of the Civil Rights Act of 1964"; (3) stopping requiring Church employees to sign or abide by its handbook or any other policy not in compliance with the SOGI Rules; and (4) providing the CDSS with an updated copy of the Church employee handbook, presumably to receive the government's blessing.

89.   If the Church and Dayspring refused to comply with all of these onerous demands, Defendant Rosales threatened that failure to comply would result in the termination of the Church's operation of the Food Program, disqualification of the Church from future program participation, and placement of the Church and Dayspring on the National Disqualification List.

90.   The CDSS Defendants' flagrant disregard for Plaintiffs' religious beliefs and practices regarding human sexuality and their strict enforcement of the PSA and/or the USDA nondiscrimination statement stands in glaring contrast to the USDA's more recent guidance concerning SOGI Rules and religious educational institutions. On August 12, 2022, the USDA issued a memorandum stating that Title IX of the Education Amendments of 1972, which "prohibits sex discrimination by educational institutions receiving financial assistance from the federal government," "includes some exceptions, including one permitting an institution to be exempt on religious grounds if there is a conflict between Title IX and a school's governing religious tenets." A true and correct copy of the USDA memorandum is attached hereto as **Exhibit K**.

91.   Title IX's exemption for religious schools is automatic. An educational institution may, but is not required to, submit a written request to the USDA in order to claim a Title IX Religious Exemption. Nevertheless, despite this clear federal guidance

VERIFIED FIRST AMENDED COMPLAINT

which respects religious freedom, Defendants continue to coercively force their SOGI Rules on the Church and Preschool, without making any attempt whatsoever to accommodate or exempt the Preschool from its draconian requirements, but rather seeking to force the Church to abandon its religious tenets in order to continue serving the community.

92. On November 4, 2022, the Church timely appealed CDSS's denial of its Food Program application to the Office of Administrative Hearings ("OAH"), requesting a written review of the denial, pursuant to 7 C.F.R. § 226.6(k). The appeal also served as a legal demand letter to CDSS, requesting that it immediately stop violating Plaintiffs' statutory and constitutional rights and immediately approve their application for Food Program Funding. A true and correct copy of Plaintiffs' Appeal and Demand Letter is attached hereto as **Exhibit L**.[2]

93. In spite of the fact that the applicable Food Program regulations require that CDSS must continue to fund organizations during the pendency of an administrative appeal, CDSS inexplicably locked Dayspring out of access to its Child Nutrition Information and Payment System (CNIPS) website sometime in October 2022, prematurely cutting off Dayspring's Food Program funding. This unannounced lockout was before Plaintiffs 15-day response/appeal period elapsed (November 4th) and well before the appeal was decided (December 28th). Furthermore, CDSS waited to notify Dayspring that its CNIPS access was reinstated until November 30, 2022, more than three weeks after the matter was officially brought to CDSS's attention.

94. On December 28, 2022, Administrative Law Judge Sean Gavin dismissed the Church's appeal, holding that he and the OAH do not have the jurisdiction to decide the Church and Dayspring's constitutional challenges to the SOGI Rules. A true and correct of the OAH ruling is attached hereto as **Exhibit M**.

---

[2] The actual date Plaintiffs' appeal and demand letter was finalized and submitted to the OAH and CDSS is November 4, 2022, however it was mistakenly dated October 4, 2022.

VERIFIED FIRST AMENDED COMPLAINT

95. On January 30, 2023, Defendant Sean Hardin, Acting Chief of the Child and Adult Care Food Program at CDSS submitted a letter to the Church and Dayspring with the subject: 2022–23 APPLICATION DENIAL APPEAL DECISION LETTER FOR CNIPS ("CDSS Decision").  A true and correct copy of the CDSS letter is attached hereto as **Exhibit N**.

96. In the CDSS Decision letter, CDSS affirmed its decision to deny the Church's Food Program 2022-2023 application, terminated the Church's agreement with CDSS to operate the Food Program effective December 29, 2022, and disqualified the Church from participation in the Food Program.

97. Defendant Hardin falsely alleged in the Decision Letter that the OAH's administrative ruling somehow affirmed or approved the CDSS's decision to unilaterally terminate its longstanding agreement with the Church permitting CDSS to withhold neutrally available taxpayer funds used to feed indigent children based solely on the Church's sincerely held religious beliefs and practices regarding human sexuality.

98. However, the OAH's ruling merely held that it did not have jurisdiction to decide the serious constitutional issues involved nor the power to decide CDSS's allegations against the Church of substantial non-compliance.

99. The CDSS Decision Letter included, but did not explain or address, as its last attachment, a USDA "Non-discrimination Statement," which asked for counsel's signature.

100. The attached USDA statement confusingly did not list "gender identity" and "sexual orientation" as protected categories, but only "sex."

101. The CDSS Decision Letter did not explain why, post-termination of the Church from the Food Program regarding SOGI issues, it attached a different USDA statement and requested the Church's counsel to sign the statement on behalf of the Church.

102.   On February 21, 2023, Defendant Jessie Rosales, emailed the Church and Dayspring confirming yet again their Food Program application denial and that Plaintiffs are no longer eligible to participate in the Food Program. He apologized for any confusion and clarified that the USDA nondiscrimination statement sent with the January 30, 2023, correspondence (missing SOGI) was attached pro forma and that the CDSS is in the process of updating its nondiscrimination language to include "sexual orientation" and "gender identity."   A true and correct of this CDSS email is attached hereto as **Exhibit O.**

103.   Consistent with the CDSS's repeated threats to the Church, on or about February 7, 2023, "C2Hardin" who is believed to be, on information and belief, Defendant Sean Hardin, terminated the Church's access to the CNIPS web portal with the message "The sponsor's enrollment was closed/terminated by: CDE terminated for the year as of: 12/30/22."

## FIRST CAUSE OF ACTION

### Violation of the Free Exercise Clause

104.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 of this Complaint as though set forth fully herein.

105.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to the free exercise of religion.

106.   Plaintiffs have sincerely held religious beliefs that the Bible is the infallible, inerrant word of God and that they are obligated to believe and obey its teachings. Plaintiffs believe they are commanded by God to love their neighbors as themselves. They also believe that God created and designed men and women in His image, male and female, and that human sexuality is defined and determined by the Creator, not by human feelings or desires. They also believe that God loves everyone and that God wants everyone to know Him and have a personal relationship with God through Jesus Christ.

They also believe that God has commanded and called Christians to love all people, even those who disagree with their religious beliefs—including their beliefs about human sexuality.

107.   Plaintiffs' sincerely held religious beliefs prohibit them from complying with the SOGI Rules.

108.   Plaintiffs also exercise their religious beliefs during various school activities, including but not limited to, providing nutritious meals to children, teaching them Bible lessons and Christian beliefs, and engaging in religious practices such as chapel and prayer.

109.   The Food Program's new SOGI Rules, on their face and as applied, treat religious churches and private religious schools that maintain traditional religious beliefs about human sexuality, including Plaintiffs, differently and more harshly compared to how the SOGI Rules treat comparable public schools, secular private schools, and even religious private schools that agree with Defendants' views on human sexuality.

110.   The SOGI Rules, on their face and as applied, allow all other secular public or secular private schools and even religious schools who may agree with Defendants' views on human sexuality to continue to freely participate in the Food Program and continue to receive public funding. Defendants' policy and practice of barring the participation in the Food Program and blocking generally available public funding only for certain religious organizations that maintain traditional religious views regarding human sexuality, violates Plaintiffs' constitutionally protected right to the free exercise of religion.

111.   The SOGI Rules, on their face and as applied, impose a substantial burden on Plaintiffs' free exercise of religion. *See Sherbert v. Verner*, 374 U.S. 398 (1963). The SOGI Rules place substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of the Holy Bible

including, but not limited to, those tenets regarding God's design of men and women in exchange for continuing to be able to feed indigent children in their community.

112. The SOGI Rules, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs or participation in the Food Program.

113. The government violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

114. The government cannot disqualify otherwise eligible religious schools from the Food Program "solely because of their religious character," *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017), nor may it "identify and exclude otherwise eligible schools on the basis of their religious exercise," *Carson*, 142 S. Ct. at 2002.

115. Yet that is what Defendants have done: They have excluded the Church and Dayspring from the Food Program because of their religious character, beliefs, and/or exercise.

116. Forcing the Church and Dayspring to choose between their religious character, beliefs, and/or exercise and participation in the Food Program violates the Free Exercise Clause.

117. Moreover, government actions burdening religion must face strict scrutiny when they are not neutral or generally applicable. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533–43 (1993).

118.    Because Defendants' SOGI Rules would force Plaintiffs to violate their religious beliefs (and have already penalized them for declining to do so), the SOGI Rules substantially burden their religious exercise.

119.    The SOGI Rules also are not neutral or generally applicable.

120.    The decision to exclude the Church and Dayspring from the Food Program was based on hostility towards their religious beliefs about human sexuality.

121.    The SOGI Rules send the message to houses of worship and other religious entities, that organizations that maintain traditional and/or biblical beliefs about human sexuality are second-class institutions, outsiders, and not full members of the community.

122.    State Defendants' decision to prematurely cut off the Church and Dayspring's Food Program funding several months before the administrative appeal was resolved, in violation of applicable regulations, further demonstrates Defendants' impermissible government hostility towards religion.

123.    State Defendants' comparison of Plaintiffs' sincerely held religious beliefs about human sexuality to racial or sexist bigotry and discrimination also evidences impermissible government hostility towards religion.

124.    And State Defendants' decisions about whether to admit or exclude schools under the SOGI Rules—including their unfettered discretion to apply or ignore Title IX's religious exemption for particular religious schools—are made in a system of individualized assessments and thus are not generally applicable. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

125.    Defendants do not have a compelling interest that justified their discrimination against and/or imposition of substantial burden upon houses of worship and other religious institutions, including Plaintiffs' religious beliefs and activities.

126.    The SOGI Rules also do not employ the least restrictive means available to fulfill ending discrimination because they discriminate against houses of worship and other religious organizations that maintain traditional and/or biblical views of human

sexuality, including Plaintiffs, while providing no religious exemptions nor any reasonable attempt to accommodate religion—but rather defaming Plaintiffs' religious beliefs as bigoted and discriminatory and not worthy of recognition or respect.

127.   The SOGI Rules, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served. The SOGI Rules rather impose the *most* restrictive means on religiously orthodox houses of worship and schools, including Plaintiffs—specifically, a total ban on participation in the Food Program and a complete bar of public funds.

128.   The SOGI Rules, on their face and as applied, constitute a religious gerrymander.

129.   The SOGI Rules also fail to respect the religious autonomy of religious educational institutions and fail to respect that the First Amendment requires a co-religionist exemption and a ministerial exemption as to hiring.

130.   Additionally, the unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *San Diego Cnty. Water Auth. v. Metro. Water Dist. of S. Cal.*, 12 Cal.App.5th 1124, 1159 (2017) (citing *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604 (2013)).

131.   Under the unconstitutional conditions doctrine, "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz*, 570 U.S. at 604 (internal quotation and citation omitted). The doctrine "limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *See, e.g.*, *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006).

132.   Defendants' SOGI Rules constitute an unconstitutional condition because they require the Church and Preschool to waive their rights to the free exercise of religion and freedom of speech (see below) in order to continue to receive the public benefits.

133.   The SOGI Rules, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

134.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

135.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

**SECOND CAUSE OF ACTION**

**Violation of the Freedom of Speech and Association**

136.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 of this Complaint as though set forth fully herein.

137.   The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from abridging the right to free speech or the right of people to peaceably assemble.

138.   The First Amendment protects the right of persons to speak and associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

139.   The First Amendment protects Plaintiffs' right to speak, to freely associate, to be free not to speak, and to not associate.

140.   The SOGI Rules, however, restrict and compel speech about human sexuality and do so based on the speech's content and viewpoint by requiring speech affirming any self-professed gender identity or sexual orientation and by prohibiting speech taking a different viewpoint.

141.   The SOGI Rules require Church staff, Preschool teachers, and children to speak in ways that are contrary to biological sex, including the use of pronouns, in educational activities, curricula, screening questions, record keeping, and signage.

VERIFIED FIRST AMENDED COMPLAINT

142.   The SOGI Rules also require Plaintiffs to adopt policies governing speech that are contrary to their current expression, to post posters contrary to their beliefs, and to file assurances of compliance with government officials, affirmatively pledging to avoid speech that the government disfavors.

143.   The SOGI Rules also intrude upon the right to expressive association by prohibiting Plaintiffs from requiring their employees to agree with and live out their religious beliefs about human sexuality.

144.   The SOGI Rules, on their face and as applied, seek to coerce Plaintiffs to bring all of their policies and procedures, including the written employment handbook, in alignment with the government's views of human sexuality. This represents a transparent attempt by state Defendants to tell Plaintiffs what they must say (and cannot say) about sexual orientation and gender identity.

145.   The SOGI Rules, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech.

146.   The SOGI Rules, on their face and as applied, unconstitutionally discriminate on the basis of the content of Plaintiffs' speech, specifically its religious content regarding human sexuality.

147.   The SOGI Rules, on their face and as applied, unconstitutionally discriminate against Plaintiffs' speech on the basis of viewpoint, specifically Plaintiffs' religious viewpoints about human sexuality.

148.   The government may not deprive someone of a "government benefit" that the "person previously enjoyed, conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 869 (9th Cir. 2016).

149.   Defendants lack a compelling, legitimate, or rational interest in the SOGI Rules, on their face and as applied, particularly in the light of the differential standards for traditional and orthodox churches and faith-based institutions (banning Food Program

participation and funding) compared to other secular schools or institutions (allowing Food Program participation and funding). The state has no compelling interest whatsoever in mandating what houses of worship or religious institutions must or cannot say, whether expressed verbally or in writing.

150.   The SOGI Rules also are not narrowly tailored to accomplish the government's purported interest because they operate as a blanket ban on all churches, religious schools, and other religious institutions with traditional and/or biblical views on human sexuality.

151.   The SOGI Rules, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose. The SOGI Rules rather impose the *most* restrictive means on certain houses of worship and religious schools, including Plaintiffs, by banning them from all Food Program participation and funding.

152.   On their face and as applied, the SOGI Rules' violation of Plaintiffs' right to free speech and association has caused, is causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

153.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their constitutional rights.

154.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

### THIRD CAUSE OF ACTION

### Violation of the Establishment Clause

155.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 of this Complaint as though set forth fully herein.

156.   The Establishment Clause of the First Amendment to the U.S. Constitution, mandates, among other things, that "Congress shall make no law respecting an establishment of religion…." U.S. Const. amend. I, §1. The Establishment Clause is

incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

157. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). As such, government may not establish what beliefs are orthodox nor may it impose its preferred orthodoxies on its citizens.

158. The Establishment Clause thus prohibits Defendants from preferring and favoring certain religious beliefs over others.

159. The SOGI Rules, on their face and as applied, violate the Establishment Clause because they punish Plaintiffs' traditional orthodox religious beliefs about human sexuality, coercing Plaintiffs to permanently surrender, abandon and waive these religious beliefs *and* concurrently pledge allegiance to the government's favored beliefs about human sexuality in order for Plaintiffs to continue to continue to receive public funds to feed needy children in their community.

160. The Establishment Clause also prohibits excessive government entanglement with religion. Yet the SOGI Rules, on their face and as applied, excessively entangle the government with religion because they provide government officials with the authority to monitor and control the religious beliefs and practices of houses of worship and religious organizations including, but not limited to, reviewing Plaintiffs' personnel handbook, monitoring their employment practices, and even interfering with who the Church and Preschool must hire or fire as its lead pastor, youth pastor, preschool teachers, or choir director.

161. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Defendants'

SOGI Rules unconstitutionally seek to prescribe (and replace) Plaintiff's religious orthodoxy regarding human sexuality.

162.   Defendants' SOGI Rules, on their face and as applied, require government actors, who are not theological experts, to review, scrutinize and judge the written and spoken statements of places of worship and other religious institutions (here Plaintiffs' Employee Handbook and other Plaintiffs' documents), to determine whether the statements made by religious institutions regarding human sexuality align with the government's favored view.

163.   "The First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020) (cleaned up). The Defendants' SOGI Rules, on their face and as applied, coercively deny places of worship and religious institutions, including Plaintiffs, the freedom to maintain their religious autonomy, including their inherent right to maintain their distinct, deeply, and sincerely held religious beliefs regarding human sexuality, engage in the public expression of those same religious beliefs, or act in conformity with their religious beliefs.

164.   No compelling state interest exists to justify Defendants' coercive attempt to, by the means of its SOGI Rules and funding threats, to obliterate and replace Plaintiffs' constitutionally protected religious beliefs and practices regarding human sexuality.

165.   The State Defendants' alleged power, by imposing their SOGI Rules, on their face and as applied, to determine which individuals will or will not be employed to minister at Plaintiff's Church and Preschool also violates the First Amendment, which prohibits government involvement in such purely ecclesiastical decisions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012).

166.   Defendants' policies and practices therefore violate the Establishment Clause of the First Amendment to the United States Constitution.

167.   The SOGI Rules, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

168.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their cherished constitutional liberties.

169.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## FOURTH CAUSE OF ACTION

### Violation of the Religious Freedom Restoration Act

### (42 U.S.C. § 2000bb *et seq.*)

170.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 of this Complaint as though set forth fully herein.

171.   The Religious Freedom Restoration Act (RFRA) prohibits the federal government from substantially burdening a person's exercise of religion, unless the government proves that the burden is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000bb-1(a).

172.   Plaintiffs hold sincere religious beliefs about human sexuality.

173.   Defendants' decision to exclude Plaintiffs from the Food Program based on the SOGI Rules substantially burdens Plaintiffs' religious exercise by forcing them to choose between following the precepts of their religion and receiving a government benefit.

174.   Defendants' actions do not serve a compelling governmental interest and are not the least restrictive means of furthering any purported compelling interest, and therefore violate RFRA.

175.   The SOGI Rules, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

176.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their statutory rights under RFRA.

177.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## FIFTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act

### (5 U.S.C. § 706)

178.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 of this Complaint as though set forth fully herein.

### *Without Procedure Required By Law & Contrary to Law*

179.   A reviewing court must "hold unlawful and set aside agency action" if the agency action is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

180.   Under the Administrative Procedure Act, agencies must follow public notice and comment procedures before they make final, binding rules.

181.   Because the Federal Defendants did not give prior notice of their SOGI Rules, they violated the requirement that an agency must publish a general notice of proposed rulemaking in the Federal Register, including "a statement of the time, place, and nature of public rule making proceedings" and "either the terms or substance of the proposed rule or a description of the subjects and issues involved," or else find good cause to omit these procedures on the record. 5 U.S.C. § 553(b).

182.   Nor were the Federal Defendants' actions the subject of an opportunity for public comment. There was no specific request for comment on adding new protected classes to Title IX, let alone on the rationale for doing so, or on the import of such a

change. Thus, the Federal Defendants violated the requirement for a legislative or substantive rule that "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(c).

183.   Federal Defendants made no finding of good cause for omitting either of these procedures, nor did they purport to make such a finding.

184.   No Senate-confirmed official signed or authorized each agency action, and thus their issuance and implementation violate the U.S. Constitution's Appointments Clause. U.S. Const. art. II § 2. Only a principal officer of the United States may promulgate rules or exercise the powers of the office that issued these mandates, and any inferior officer must be supervised by a principal officer in the enforcement of these rules.

### *Arbitrary, Capricious, and an Abuse of Discretion*

185.   Under the APA, a reviewing court must "hold unlawful and set aside agency action" if the agency action is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

186.   Defendants' actions here are arbitrary, capricious, and an abuse of discretion. They lack reasoned decision making.

187.   USDA offered no rationale in its departmental regulation describing why it was adding new protected classes to Title IX, or even acknowledging that it had done so.

188.   Likewise in the final state letter, policy update, and Q&A, USDA failed to offer a proper rationale for this change.

189.   Defendants failed to consider the text, structure, legislative history, past agency positions, and historical judicial interpretation of Title IX and its implementing regulations, all of which confirm that "sex" means biological sex—that is, a person's status as male or female as determined by biology. Nor did USDA consider that it lacks any other source of authority for such a mandate in this program.

VERIFIED FIRST AMENDED COMPLAINT

190.   Defendants failed to address, much less consider or adequately consider important aspects of the problem that led to or would be caused by this change, such as the disruption caused by removing benefits or the degree of regulatory uncertainty that the new actions create for children and schools. In particular, the government failed to consider or adequately consider reliance interests of children and schools in continuing school meal programs.

191.   Defendants failed to consider the impact on private religious schools and the students who attend them, including their First Amendment interests in freedom of speech, religion, and association; their interests under the Religious Freedom Restoration Act; their other liberty interests; and their interests in allowing sex-separated facilities and activities.

192.   Defendants failed to adequately consider any alternative policies that respect the interests of private religious schools and their students, including their female students, such as (1) taking no action; (2) creating rules to protect female sports and privacy under the correct understanding of Title IX; (3) grandfathering existing categories of programs and practices covered by Title IX; (4) confirming via regulation that a religious exemption applies under Title IX, the Religious Freedom Restoration Act, and the First Amendment, even in the context of sexual orientation and gender identity, and by operation of statute; and (5) creating or expanding existing exemptions for those with safety concerns, moral objections or other reliance on past policies.

193.   In issuing its SOGI Rules, Defendants relied on facts, studies, legal theories, and recommendations only from one side of the issue, and it ignored other evidence and experts, who do not support ignoring biological realities. USDA, for example, failed to adequately consider that sex is a biological reality, and there is an evolving state of medical and scientific knowledge about gender that the federal government should not circumvent by rulemaking.

194.   The SOGI Rules rely on the erroneous legal view that *Bostock* requires new protected classes in Title IX. Without that mistaken view, there is a reasonable possibility that the SOGI Rules would not have been issued.

### *Contrary to Law & Without Statutory Authority*

195.   Under the APA, a reviewing Court must "hold unlawful and set aside agency action" if the agency action is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "contrary to constitutional right, power, privilege, or immunity" under 5 U.S.C. § 706(2)(A)–(C).

196.   Likewise, a court must "compel agency action unlawfully withheld." U.S.C. § 706(1).

197.   Defendants' actions are not in accordance with law, and are in excess of statutory jurisdiction, authority, and limitations, and contrary to constitutional rights and power. Defendants have no source of authority for their mandate, and their actions violate the constitutional and statutory rights described in the above claims.

198.   In addition, USDA's SOGI Rules exceed the authority of Title IX, which does not address gender identity or sexual orientation. 20 U.S.C. § 1681. Under the text, structure, legislative history, and historical judicial interpretation of Title IX and its implementing regulations, "sex" means biological sex—that is, a person's status as male or female as determined by biology.

199.   Title IX and longstanding regulations expressly allow distinctions based on biological sex in certain circumstances.

200.   The SOGI Rules not only lack statutory authority, but they also conflicts with Title IX's promises of equal opportunity and effective accommodation for girls and boys.

201.   Title IX and its related regulations consider whether "program components reveal that treatment, benefits, or opportunities are not equivalent in kind, quality or availability" between the sexes. 44 Fed. Reg. at 71,415.

VERIFIED FIRST AMENDED COMPLAINT

202.   As a result of profound physiological differences between the sexes, both before and after puberty, equal opportunity and effective accommodation for both sexes not only allows, but requires, in Title IX that schools provide separate facilities, including restrooms and physical education activities, for boys and girls.

203.   This reading of Title IX and its regulations is compelled by the U.S. Constitution's clear-notice rule. This rule is a substantive canon of statutory interpretation that applies because Title IX displaces traditional state police power authority, abrogates state sovereign immunity, and attaches conditions to spending programs.

204.   USDA's reading of Title IX also violates the major questions doctrine of statutory interpretation. Congress did not, in Title IX, clearly give USDA authority to impose the SOGI Rules since they vastly changes both the rights and obligations set forth in Title IX and also the way that school programs and activities are operated in the country.

205.   Title IX's prohibition of discrimination "on the basis of sex" does not encompass discrimination based on sexual orientation or gender identity. A court judgment holding that this mandate does not exist would mean that Plaintiffs do not need an exemption and thus reputationally would not be labelled as not in compliance with Title IX.

206.   Any application or enforcement of Title IX or its regulations to address gender identity or sexual orientation, or to impose such a mandate on any theory in school lunch programs, exceeds Congress's Article I enumerated powers, lacks clear notice under the Spending Clause, coerces and commandeers the States, and transgresses on the reserved powers of the State under the federal constitution's structural principles of federalism and the Tenth Amendment. U.S. Const. art. I, § 8, cl. 1; *id.* amend. X.

207.   USDA has no statutory or constitutional authority to allow its federal or state program officials to withhold program participation from the Church, and its refusal

through these officials to include the Church in the program amounts to unlawfully withheld agency action.

208.   Defendants have also acted contrary to law by narrowing or imposing arbitrary hurdles in the way of the Church exercising its Title IX religious exemption, which applies by operation of law and thus should be automatically respected by Defendants.

209.   Defendants' actions unlawfully rest on a view that 7 C.F.R. § 15a.205 (i.e., the religious exemption) still requires interim compliance with Title IX until the Federal Defendants issue a written exemption letter; such enforcement of 7 C.F.R. § 15a.205 is new to the SOGI Rules, and conflicts with the texts of § 15a.205 and Title IX.

210.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

A.   That this Court declare that Defendants' SOGI Rules, as applied to Plaintiffs and similarly situated religious organizations, violate the Free Exercise, Free Speech, Free Association, and Establishment Clauses and the Religious Freedom Restoration Act;

B.   That this Court declare unlawful, set aside, and vacate the agency actions as to implementation, enforcement, or application of USDA's SOGI Rules in the Food Program, and that this Court render a declaratory judgment stating that USDA's SOGI Rules violate the Administrative Procedure Act;

C.   That this Court issue preliminary and permanent injunctions ordering Defendants to reinstate Plaintiffs' Food Program Agreement effective December 29, 2022, delay the effective date of the federal SOGI Rules under 5 U.S.C. § 705, and prohibit enforcement or implementation of the SOGI Rules against Plaintiffs in the future;

VERIFIED FIRST AMENDED COMPLAINT

D.    That this Court grant to Plaintiffs reasonable costs and expenses of this action, including attorneys' fees and interest, as allowed by law; and

E.    That this Court grant such other and further relief the Court determines is just and proper.

Dated June 2, 2023                    Respectfully submitted,


                                      /s/Jeremiah J. Galus
                                      David A. Cortman, GA Bar No. 188810*
                                      dcortman@adflegal.org
                                      Ryan J. Tucker, AZ Bar No. 034382*
                                      rtucker@adflegal.org
                                      Jeremiah J. Galus, AZ Bar No. 030469*
                                      jgalus@adflegal.org
                                      ALLIANCE DEFENDING FREEDOM
                                      15100 N. 90th Street
                                      Scottsdale, AZ 85260
                                      (480) 444-0020

                                      Julie Blake, DC Bar No. 998723*
                                      jblake@adflegal.org
                                      Andrea Dill, DC Bar No. 1719500*
                                      adill@adflegal.org
                                      ALLIANCE DEFENDING FREEDOM
                                      440 First Street NW, Suite 600
                                      Washington, DC 20001
                                      (202) 393-8690

                                      Dean R. Broyles, Esq., CA Bar No. 179535
                                      dbroyles@nclplaw.org
                                      NATIONAL CENTER FOR LAW & POLICY
                                      539 West Grand Ave.
                                      Escondido, CA 92025
                                      (760) 747-4529

                                      Mariah Gondeiro, Esq. CA Bar No. 323683
                                      mgondeiro@faith-freedom.com
                                      Julianne Fleischer, Esq. CA Bar No. 337006
                                      jfleischer@faith-freedom.com
                                      ADVOCATES FOR FAITH & FREEDOM
                                      25026 Las Brisas Road
                                      Murrieta, California 92562
                                      (951) 600-2733

                                      *Admitted Pro Hac Vice
                                      Attorneys for Plaintiff

37

VERIFIED FIRST AMENDED COMPLAINT

**VERIFICATION**

I, Ronald Wade, Senior Pastor and Chief Executive Officer of Church of Compassion, Inc., declare as follows:

1.      Church of Compassion, Inc, a California Domestic Nonprofit Corporation, is a party to this action. I am the Senior Pastor and Chief Executive Officer and am duly authorized to act on behalf of Church of Compassion, Inc. and its subsidiary organization, Dayspring Christian Learning Center.

2.      I have read the foregoing Verified First Amended Complaint and know of the contents thereof.

3.      The same is true of my own knowledge, except as those matters which therein are stated on information as to information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _June 1, 2023_, at _EL CAjON_, California.

_Ronald Wade_
Church of Compassion, Inc.
By: Ronald Wade
Its: Pastor and Chief Executive Officer

VERIFIED FIRST AMENDED COMPLAINT