1 ROB BONTA
  Attorney General of California
2 GREGORY D. BROWN
  Supervising Deputy Attorney General
3 EMMANUELLE S. SOICHET (SBN 290754)
  KATHERINE J. GRAINGER (SBN 333901)
4 Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 510-4426
6   Fax:  (415) 703-5480
    E-mail:  Emmanuelle.Soichet@doj.ca.gov
7 *Attorneys for State Defendants*

8 David A. Cortman, AZ Bar #029490
  Ryan J. Tucker, AZ Bar #034382
9 Jeremiah J. Galus, AZ Bar #030469
  Alliance Defending Freedom
10 15100 N. 90th Street
  Scottsdale, AZ 85260
11 Telephone: (480) 444-0020
  E-mail: jgalus@adflegal.org
12 *Attorneys for Plaintiffs*

13

14                IN THE UNITED STATES DISTRICT COURT

15             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

16

17 **CHURCH OF COMPASSION, a**          3:23-cv-0470-AGS-WVG
   **California Non-Profit Corporation,**
18 **DAYSPRING CHRISTIAN**              **SETTLEMENT AGREEMENT**
   **LEARNING CENTER, a subsidiary**
19 **of the CHURCH OF COMPASSION,**

                                        Courtroom:
20                    Plaintiffs,       Judge:      The Honorable Andrew
                                                    G. Schopler
21        **v.**

22

23 **KIM JOHNSON, in her official**
   **capacity as the Director of the**
24 **California Department of Social**
   **Services; et al.,**

25                    Defendants.

26

27

28

1

This settlement agreement (Agreement) is entered into on the date set forth below between Plaintiffs Church of Compassion and Dayspring Christian Learning Center (Plaintiffs) and defendants Kim Johnson, Jessie Rosales, and Sean Hardin (State Defendants).

## RECITALS

1.     Plaintiff Church of Compassion is a California non-profit corporation and Christian church that owns and operates Dayspring Christian Learning Center, a Christian preschool and daycare program (Dayspring).

2.     The Child and Adult Care Food Program (CACFP) is a federal program that provides supplemental reimbursements for meals and snacks to eligible children and adults who are enrolled for care at participating child care centers, day care homes, and adult day care centers.  The United States Department of Agriculture (USDA) administers the CACFP nationwide, providing funding for states to administer the CACFP within their respective states.  As of July 1, 2022, the Department of Social Services (the Department) became responsible for administering the CACFP within the State of California.

3.     Defendant Kim Johnson is the Director of the Department.  Defendant Jessie Rosales is the Chief of the CACFP Branch within the Department.  Defendant Sean Hardin is a manager within the CACFP Branch.

4.     From October 2002 to December 2022, Dayspring participated in, and received funding through, the CACFP.

5.     In December 2022, the Department terminated Dayspring's participation in the CACFP, and Dayspring was placed on the CACFP National Disqualified List pursuant to 7 C.F.R. § 226.6(c)(7).

6.     On March 15, 2023, Plaintiffs filed this lawsuit challenging Dayspring's termination from the CACFP (the Action).

7.     To avoid the expense and uncertainty of litigation, Plaintiffs and State Defendants (together, the Parties and individually, a Party) have agreed to settle the

Action. To that end, the Parties have agreed to the terms and conditions set forth in this Agreement.

## TERMS

8.  Resolution of Action. To settle this Action, the Parties agree as follows:

a.   Dayspring agrees to execute the unmodified Permanent Single Agreement attached hereto, in full, as Exhibit A (the PSA), with the following addendum language attached to the PSA included in Exhibit A:

> Notwithstanding any provision in this PSA to the contrary, CDSS acknowledges that consistent with 7 C.F.R. 226.25(b), the only nondiscrimination laws and provisions applicable to Dayspring's participation in the program are those identified in 7 C.F.R. 226.6(b)(4)(ii). CDSS further acknowledges that Dayspring is an educational institution which is controlled by a religious organization pursuant to 20 U.S.C. § 1681(a)(3) and that Dayspring may claim an exemption from Title IX to the extent allowed by 20 U.S.C. § 1681(a)(3).

Dayspring agrees to execute the PSA within two (2) days of executing this Agreement.

b.   The Department agrees that, subject to the USDA's approval, Dayspring will be removed from the CACFP National Disqualified List, and the Department will take the necessary steps to support the removal of Dayspring and its responsible principals from the CACFP National Disqualified List as soon as possible after the Effective Date;

c.   Dayspring agrees to submit all documentation necessary to apply for CACFP participation, including documentation required of renewing institutions as defined under 7 C.F.R. § 226.6(b)(2);

d.   The Department agrees to reinstate Dayspring as a participant in the CACFP within ten (10) business days of the Department's receipt of notification from USDA of Dayspring's removal from the CACFP National Disqualified List,

receipt of the executed PSA, and submission of all other necessary documentation required for reinstatement;

e.      Within 30 days of the execution of the PSA, the Department agrees to reimburse Dayspring for its program costs for administration of the CACFP from February 1, 2023 to September 30, 2023, at an amount of $3,809.87 per month, totaling $30,478.96;

f.      The Department agrees to reimburse Dayspring for its program costs for administration of the CACFP for additional months in the event the Department has not received notification from USDA of Dayspring's removal from the National Disqualified List within fourteen (14) days after the Effective Date of this agreement, and at such time Dayspring has submitted an executed PSA and any additional documentation necessary for reinstatement in CACFP. In such event, the Department agrees to reimburse Dayspring at an amount of $3,809.87 per month. To claim reimbursements for any month pursuant to this paragraph, Dayspring must provide all documentation for that month which would be required of CACFP program operators pursuant to 7 C.F.R. Part 226. This reimbursement amount shall be calculated on a pro rata basis for any partial month occurring between October 1, 2023, and the reinstatement date of Dayspring into the CACFP;

g.      Dayspring agrees that it will not seek further reimbursement from the CACFP or the Department for any expenses it incurred between January 1, 2023 and the date that Dayspring is reinstated into the CACFP;

h.      Within fifteen (15) days of the Effective Date, the Department agrees to issue guidance to CACFP participants regarding the availability of a religious exemption from the requirements of Title IX, pursuant to 20 U.S.C. § 1681(a)(3); and

i.      Within fifteen (15) days of Dayspring being reinstated into the CACFP, Dayspring shall voluntarily dismiss the Action.

9.    <u>Breach</u>.  The Parties will make a good faith effort to correct minor offenses of this Agreement before seeking court intervention.  Before filing any motion or lawsuit to enforce the terms of this Agreement, the Party seeking relief shall contact counsel for the opposing Party to discuss thoroughly the substance of the contemplated motion or lawsuit and any potential resolution.

a.    The Parties agree to meet and confer within five (5) days of notice of the alleged breach (the "Notice of Alleged Breach"), but may, at their option, meet and confer before that.

b.    The Parties also agree that if State Defendants advise Plaintiffs in writing as part of the meet-and-confer process that they are willing to take action to cure the alleged breach of the Agreement in order to informally resolve the dispute, State Defendants shall be given a thirty (30)-day period to cure the alleged breach following the meet-and-confer conference.

c.    The Parties also agree that if Plaintiffs advise State Defendants in writing as part of the meet-and-confer process that they are willing to take action to cure the alleged breach of the Agreement in order to informally resolve the dispute, Plaintiffs shall be given a thirty (30)-day period to cure the alleged breach following the meet-and-confer conference.

10.    <u>Effective Date</u>.  The Agreement shall be operable and effective when it is fully executed.

11.    <u>Fees and Costs</u>.  Within ninety (90) days of the Effective Date of this Agreement, State Defendants agree to pay $160,000 in attorneys' fees and costs incurred by Plaintiffs in this matter, payable to Alliance Defending Freedom in the amount of $54,875, the National Center for Law & Policy in the amount of $47,300, and Advocates For Faith & Freedom in the amount of $57,825.  Such payment will be in full and final settlement of any and all attorneys' fees and/or costs claims that have been, could have been, or could be made in this Action.  Aside from the payment as set forth in this paragraph by State Defendants to

Plaintiffs, the Parties shall bear their own respective expenses and costs arising out of this Action.

12.    Release.  Upon the Effective Date, Plaintiffs and their officers, employees, beneficiaries, successors, assigns, agents, personal representatives, and all other individuals or entities acting on Plaintiffs' behalf, shall release and forever discharge the claims in the Action, and agree not to file or prosecute any legal action or proceeding based on, or arising out of, any of the released claims in the Action.

13.    Future CACFP Participation.  The Parties agree and understand that this Agreement serves to reinstate Dayspring's participation in the CACFP program, but it does not otherwise limit the Department's ability to take future corrective action against Dayspring (including termination from the CACFP program) upon violation of applicable program requirements, as set forth by the program's governing terms and regulations.

12.    Duty of Cooperation.  Each Party agrees to take, and to cause its related parties to take, all actions and to execute all further documents as may be reasonable and necessary or desirable to implement the intent and provisions of this Agreement fully and effectively.  Each Party agrees to deliver all such documents to the appropriate parties, as reasonably necessary or as contemplated by the terms of this Agreement.

13.    Binding Effect.  This Agreement is for the benefit of and shall be binding on all Parties, and their respective successors, heirs, and assigns upon the date the Court enters judgment pursuant to the terms of the Agreement.

14.    Governing Law.  The interpretation and enforcement of this Agreement are governed by the laws of the State of California.

15.    Entire Agreement.  This Agreement constitutes the entire final agreement between the Parties.  There are no oral understandings, terms, or conditions.  All prior understandings, terms or conditions are deemed merged into this Agreement.

The Agreement may not be modified except by means of a writing signed by all Parties to this Agreement.

16.    Amendments.  Any amendment to the Agreement must be in writing, signed by the Parties and their counsel, and expressly state that it is amending this Agreement.

17.    Severability.  In the event that any part of this Agreement is found invalid, unenforceable, or non-binding, the remaining portion will remain in force and fully binding.

18.    No Admission.  It is understood and agreed by the Parties that this Agreement is a compromise of disputed claims, and that the terms of this Agreement provided herein do not constitute an admission of any liability, wrongdoing, or violation of rights by either State Defendants or Plaintiffs, nor shall this Agreement be admissible as evidence of any liability, wrongdoing, or violation of rights as alleged arising prior to the Effective Date of this Agreement.

19.    Waiver.  No delay or failure by any Party to exercise its rights under this Agreement shall be construed to be a waiver thereof, unless memorialized by written instrument signed by the Parties.  The agreed waiver of any covenant, condition, or agreement to be performed under this Agreement shall not be construed to be a continuing waiver of the same covenant, condition, or agreement, or the waiver of a different covenant, condition, or agreement.  Furthermore, the agreed waiver of any breach of this Agreement shall not be considered to be the agreed waiver of a different or subsequent such breach.

20.    Execution in Counterparts.  This Agreement may be executed in counterparts such that the signatures may appear on separate signature pages.  A copy, or an original, with all signatures appended together shall be deemed a fully executed Agreement, and facsimile, PDF or scanned versions of a Party's signature will have the force of an original signature.

21.    <u>Joint Draftsmanship</u>.  This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.  Where required by context, the plural includes the singular and the singular includes the plural.

22.    <u>Authority to Execute</u>.  Each Party to this Agreement, and each person executing it on behalf of any party, hereby represents and warrants that the undersigned have the authority and capacity to make the releases set forth herein above and have the authority to execute this document on behalf of the named principal.

23.    <u>Voluntary Agreement</u>.  The Parties enter into this Agreement freely and voluntarily, having consulted and been advised by counsel.

***Signed in Agreement to the Above Terms:***

*(Signatures on following page)*

<u>Plaintiffs</u>

Church of Compassion                 Dayspring Christian Learning Center

By: _____          By: _____

Dated: _____          Dated: _____


<u>Counsel for Plaintiffs (approved as to form)</u>

Alliance Defending Freedom

By: _____

Dated: _____


<u>Defendants</u>

Torene L.M. Schwab
Deputy Director, Legal Division
California Department of Social Services
on behalf of Kim Johnson, Jessie Rosales, and Sean Hardin

By: _____

Dated: ____10/09/2023____


<u>Counsel for State Defendants (approved as to form)</u>

California Department of Justice
Office of the Attorney General

By: _____

Dated: _____

Plaintiffs

Church of Compassion                    Dayspring Christian Learning Center

By: _____            By: _____

Dated: _____            Dated: _____


Counsel for Plaintiffs (approved as to form)

Alliance Defending Freedom

By: _____

Dated: _____


Defendants

Torene L.M. Schwab
Deputy Director, Legal Division
California Department of Social Services
on behalf of Kim Johnson, Jessie Rosales, and Sean Hardin

By: _____

Dated: _____


Counsel for State Defendants (approved as to form)

California Department of Justice
Office of the Attorney General

By: _____

Dated: _____10/09/2023_____

1   Plaintiffs

2   Church of Compassion                    Dayspring Christian Learning Center

3   By: _____           By: _____

4   Dated: _10-11-23_____           Dated: _10-11-23_____

5

6   Counsel for Plaintiffs (approved as to form)

7   Alliance Defending Freedom

8   By: _____

9   Dated: _____

10

11  Defendants

12  Torene L.M. Schwab
    Deputy Director, Legal Division
13  California Department of Social Services
    on behalf of Kim Johnson, Jessie Rosales, and Sean Hardin
14
15  By: _____

16  Dated: _____

17

18  Counsel for State Defendants (approved as to form)
    California Department of Justice
19  Office of the Attorney General

20  By: _____

21  Dated: _____

22

23

24

25

26

27

28

Plaintiffs

Church of Compassion                    Dayspring Christian Learning Center

By: _____            By: _____

Dated: _____            Dated: _____


Counsel for Plaintiffs (approved as to form)

Alliance Defending Freedom

By: _____

Dated: _____ 10/10/23 _____


Defendants

Torene L.M. Schwab
Deputy Director, Legal Division
California Department of Social Services
on behalf of Kim Johnson, Jessie Rosales, and Sean Hardin

By: _____

Dated: _____


Counsel for State Defendants (approved as to form)
California Department of Justice
Office of the Attorney General

By: _____

Dated: _____

# EXHIBIT A

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

# Child and Adult Care Food Program
# Permanent Single Agreement (PSA)

In order to carry out the purpose of Section 17 of the National School Lunch Act as amended and the Regulations governing the Child and Adult Care Food Program (CACFP) issued thereunder (Title 7, *Code of Federal Regulations* [7 *CFR*], Part 226), the California Department of Social Services (CDSS) and the Program Operator (whose name and address appear below) agree to comply with 7 *CFR*, Part 226, and all requirements developed pursuant to and imposed by these regulations which also incorporates the Management Plan and Schedule A, by reference. In administering the CACFP, the Program Operator assures the CDSS it will adhere to all the requirements in the Agreement and with all CACFP Branch policies and guidance issued by the CDSS.

Contingent upon the availability of Program funds, this permanent agreement will be effective beginning with the period indicated below and remain in effect until terminated as provided herein. Reimbursement will commence on the date the Program Operator is approved to participate in the CACFP and continue to the ending date only if the Program Operator operates in full compliance with all CACFP regulations.

---

**Authority:** Title 42, *United States Code* (42 *U.S.C.*) sections 1751–1762a, 1765–1766b, 1769–1769h, 1771–90, 3030a, 5179, 5180; as amended Title 5, *United States Code* Part 301; Title 7, *United States Code* sections 612c, 612c note, 1431, 1431b, 1431e, 1431 note, 1446a–1, 1859, 2014, 2025; Title 15, *United States Code* Section 713c; Title 22, *United States Code* Section 1922; Title 2, *Code of Federal Regulations* (2 *CFR*), parts 200, 400, and 415; Title 7, *Code of Federal Regulations* (7 *CFR*), parts 15, 15a, 15b, 210, 215, 220, 225, 226, 240, 245, 250; Food Nutrition Services (FNS) Instructions; and Federal Acquisition (FAR) at 48 *CFR* Part 31.

Catalogue of Federal Domestic Assistance numbers 10.555, 10.553, 10.556, 10.558, 10.559, and 10.550. California *Education Code* (*EC*) Part 27, Chapter 9, Articles 7 through 12, and sections 48931, 49490–49570, and applicable sections of the California *Welfare and Institutions Code* (WIC).

---

**This is not an application to participate in a Child Nutrition Program**

---

## Definitions

**Center:** means a child care center, at-risk afterschool care center, an adult day care center, an emergency shelter, or an outside-school-hours care center

**Child and Adult Care Food Program (CACFP):** May also be referred to as the Program.

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

**CNP:** means a Child Nutrition Program, which includes any of the following: The National School Lunch Program, School Breakfast Program, CACFP, and the Summer Food Service Program.

**Federal Assistance:** Any funding, property, or aid that is provided to a state agency, Program Operator, institution, or recipient agency for the purpose of providing program benefits or services to eligible participants.

**FNS:** means the Food and Nutrition Service of the United States Department of Agriculture.

**Food Service Management Company (FSMC):** means an organization other than a public or private nonprofit school, with which an institution may contract for preparing and, unless otherwise provided for, delivering meals, with or without milk for use in the Program.

**Institution:** A sponsoring organization, child care center, at-risk afterschool care center, outside-school-hours care center, emergency shelter or adult day care center that enters into an agreement with the state agency to assume final administrative and financial responsibility for program operations.

**Program Operator:** means a public or nonprofit private organization that is entirely responsible for the administration of the food program in:

1. One or more day care homes;

2. A child care center, emergency shelter, at-risk afterschool care center, outside-school-hours care center, or adult day care center which is a legally distinct entity from the sponsoring organization;

3. Two or more child care centers, emergency shelters, at-risk afterschool care centers, outside-school-hours care center, or adult day care centers; or

4. Any combination of child care centers, emergency shelters, at-risk afterschool care centers, outside-school-hours care centers, adult day care centers, and day care homes. The term "sponsoring organization" also includes an organization that is entirely responsible for administration of the Program in any combination of two or more child care centers, at-risk afterschool care centers, adult day care centers or outside-school-hours care centers, which meet the definition of *For-profit center* in this section and are part of the same legal entity as the sponsoring organization.

**Responsible Individual or Responsible Principal:** means any of the following: (1) A principal, whether compensated or uncompensated, who the CDSS or FNS determines to be responsible for an institution's serious deficiency in accordance with 7 *CFR*, Part 226; (2) any other individual employed by, or under contract with, an institution or sponsored center, who the CDSS or FNS determines to be responsible for an institution's serious deficiency in accordance with 7 *CFR*, Part 226; or (3) an uncompensated individual who the CDSS or FNS determines to be responsible for an institution's serious deficiency in accordance with 7 *CFR*, Part 226.

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

**Schedule A:** This includes all information submitted electronically by the Program Operator to the CDSS in the Application Packet via the CDSS's information technology system and approved by the CDSS. This includes but is not limited to the Management Plan, Budget, Site Application(s), and Sponsor Application.

**Sponsoring Organization:** A public or nonprofit private organization that is entirely responsible for the administration of the food program in:

1. One or more day care homes;

2. A child care center, emergency shelter, at-risk afterschool care center, outside-school-hours care center, or adult day care center which is a legally distinct entity from the sponsoring organization;

3. Two or more child care centers, emergency shelters, at-risk afterschool care centers, outside-school-hours care center, or adult day care centers; or

4. Any combination of child care centers, emergency shelters, at-risk afterschool care centers, outside-school-hours care centers, adult day care centers, and day care homes. The term "sponsoring organization" also includes an organization that is entirely responsible for administration of the Program in any combination of two or more child care centers, at-risk afterschool care centers, adult day care centers or outside-school-hours care centers, which meet the definition of *For-profit center* in this section and are part of the same legal entity as the sponsoring organization.

**School:** An educational unit as defined in 7 *CFR*, parts 210, 215, and 220.

**State Agency:** For the purposes of this agreement, the state agency is the California Department of Social Services (CDSS).

**USDA, FNS:** U.S. Department of Agriculture, Food and Nutrition Service—the federal oversight agency for the Child and Adult Care Food Program.

**Hereinafter, the institution, recipient agency, or organization shall be referred to as the Program Operator.**

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

## Assurance of Civil Rights Compliance

The Program Operator assures that the CACFP will be operated in compliance with all applicable civil rights laws and will implement all applicable nondiscrimination regulations. Unless otherwise made inapplicable by law, the Program Operator hereby agrees that it will comply with Title VI and VII of the Civil Rights Act of 1964 (42 *U.S.C.* 2000d  2000e-16), Title IX of the Education Amendments of 1972 (Title 20, *United States Code* Section 1681 et seq.), Section 504 of the Rehabilitation Act of 1973 (Title 29, *United States Code* Section 794), the Age Discrimination Act of 1975 (42 *U.S.C.* 6101 et seq.), the Americans with Disabilities Act of 1990 (P.L.101-336), all provisions required by USDA nondiscrimination regulations (7 *CFR*, parts 15, 15a, 15b), Department of Justice Enforcement Guidelines for Enforcement of Nondiscrimination in Federally Assisted Programs, and the USDA Food and Nutrition Service (FNS) directives and guidelines, including data collection, public notification, and compliance reviews, to the effect that no person shall be discriminated against on the basis of race, color, national origin, sex (including gender identity and sexual orientation), age, or disability or reprisal or retaliation for prior civil rights activity in any program or activity conducted or funded by the USDA. The Program Operator hereby assures that it will immediately take necessary measures to effectuate this PSA.

This assurance is given in consideration of and for the purpose of obtaining any and all federal financial assistance, grants and loans of federal funds; reimbursable expenditures; grant or donation of federal property and interest in property; the detail of federal personnel; and the sale and lease of, and the permission to use, federal property or interest in such property or the furnishing of services without consideration or at a nominal consideration, or at a consideration that is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale, lease, or furnishing of services to the recipient, or any improvements made with federal financial assistance extended to the Program Operator by the USDA or CDSS. This includes any federal agreement, arrangement, or other contract that has as one of its purposes the provision of assistance such as food, cash assistance for the purchase of food, or any other financial assistance extended in reliance on the representations and agreements made in this assurance.

By providing this assurance, the Program Operator agrees to compile data, maintain records, and submit reports as required to permit effective enforcement of the nondiscrimination laws, and permit authorized USDA or CDSS personnel during normal working hours to review such records, books, and accounts as needed to ascertain compliance with the nondiscrimination laws. If there are any violations of this assurance, the USDA or CDSS shall have the right to seek judicial enforcement of this assurance.

This assurance is binding on the Program Operator, its successors, transfers, and assignees as long as it receives assistance or retains possession of any assistance from the CDSS. The persons whose signatures appear below are authorized to sign this assurance on behalf of the Program Operator.

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

---

## Cash in Lieu Requirements

---

The Program Operator shall comply with all provisions of 7 *CFR*, Part 240, as well as USDA guidance. Furthermore, the Program Operator will adhere to the guidance issued by the CDE and the CDSS, as applicable.

The Program Operator further agrees to the following specific provisions, as applicable:

1. Respond to the biannual (every other year) CDSS Cash in Lieu Survey. The Survey will determine if CACFP operators should receive Cash In Lieu of USDA donated foods.

2. Funds made available to Program Operators under this part shall be used only to purchase United States agricultural commodities and other foods for use in their food service under the Child and Adult Care Food Program.

3. Funds provided under this part shall be subject to 2 *CFR*, Part 200, subparts D and E; and USDA implementing regulations 2 *CFR*, Part 400 and Part 415.

4. Maintain records and reports on the receipt and disbursement of funds made available under this section, and shall retain such records and reports for a period of three years after the end of the fiscal year to which they pertain, except that, if audit findings have not been resolved, the records shall be retained beyond the three-year period as long as required for the resolution of the issues raised by the audit.

5. Cash in Lieu is not available for meals served at day care homes.

---

## Compliance with Performance Standards

---

The Program Operator shall comply with all provisions at 7 *CFR*, sections 226.6(b)(1)(xviii) [New Program Operator] and 226.6(b)(2)(vii) [Renewing Program Operator], as applicable; as well as USDA guidance. Furthermore, the Program Operator will adhere to the guidance issued by the CDE and the CDSS, as applicable.

1. The Program Operator agrees to submit information sufficient to document it is financially viable, is administratively capable of operating the CACFP, and has internal controls that comply with 2 *CFR*, Section 200.303.

2. The Program Operator agrees to expend and account for CACFP funds in accordance with the requirements of USDA FNS policies and instructions on the financial management of the CACFP; 2 *CFR*, Part 200, Subpart D.

3. The Program Operator agrees that the following documentation shall be submitted to the CDSS in accordance with Performance Standard 1 (Financial Viability and Financial Management):

State of California                                                        Permanent Single Agreement
Department of Social Services                                              CACFP 03 Rev. April 2022
Child and Adult Care Food Program

    A. Description of need/recruitment for recruiting facilities consistent with 7 *CFR*, Section
226.6(p) and any state policies.

    B. Financial documentation demonstrating the Program Operator has adequate financial
resources to operate the CACFP on a daily basis and has adequate sources of funds to
continue to pay employees and suppliers during periods of temporary interruption or delays
in CACFP payments and/or to pay debts when fiscal claims have been assessed.

    C. Invoices or other financial documents that demonstrate the costs charged to the CACFP
are in compliance with 2 *CFR*, Part 200, subparts D and E.

4. The Program Operator agrees that the following documentation shall be submitted to the CDSS in
accordance with Performance Standard 2 (Administrative Capability):

    A. Documentation demonstrating the Program Operator has an adequate number and type of
qualified staff to ensure the operation of the CACFP.

    B. A Management Plan that documents the Program Operator employs staff sufficient to meet
the ratio of monitors to facilities as set forth in 7 *CFR*, Section 226.16(b)(1).

    C. Program policies and procedures documentation that assign responsibilities and duties and
ensure compliance with civil rights requirements.

5. The Program Operator agrees to maintain adequate internal controls and oversight in accordance
with Performance Standard 3 as defined in *7 CFR, Section* 226.6(b)(1)(xviii)(C) (Program
Accountability) and sustain the following (as applicable):

    A. Ensure that the governing Board of Directors has adequate oversight of the CACFP by an
independent Board of Directors as defined at 7 *CFR*, Section 226.2.

    B. The Program Operator has a financial system with management controls specified in
writing that assure:

        i. Fiscal integrity and accountability for all funds and property received, held, and
disbursed;

        ii. The integrity and accountability of all expenses incurred;

        iii. That claims are processed accurately and in a timely manner;

        iv. That funds and property are properly safeguarded and used, and expenses incurred,
for authorized CACFP purposes; and

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

     v.    That a system of safeguards and controls is in place to prevent and detect improper financial activities by employees

C. The Program Operator maintains appropriate records to document compliance with CACFP requirements, including budgets, accounting records, approved budget amendments, management plans, and appropriate records on facility operations.

D. The Program Operator shall document in its Management Plan that it will:

     i.    Provide adequate and regular training of Program Operator organization staff and sponsored facilities in accordance with 7 *CFR*, sections 226.15(e)(12) and (14); 226.16(d)(2) and (3)

     ii.    Perform monitoring in accordance with 7 *CFR*, Section 226.16(d)(4)

     iii.    [For Day Care Home Program Operators] Accurately classify day care home providers as tier I or tier II in accordance with 7 *CFR*, Section 226.15(f)

     iv.    Ensure that a system is in place that prevents administrative costs funded from CACFP reimbursements exceeding regulatory limits as set forth in 7 *CFR*, sections 226.12(a) and 226.16(b)(1)

E. All independent centers and facilities under Program Operator supervision/control shall document and adhere to practices that result in the operation of the CACFP in accordance with the meal service, record keeping, and other operational requirements in 7 *CFR*, Part 226. These practices shall be documented in the independent center's application or in the Program Operator's Management Plan and shall demonstrate the independent center or sponsored facilities:

     i.    Provide meals that meet the meal patterns set forth in 7 *CFR*, Section 226.20

     ii.    Comply with licensure or approval requirements set forth in 7 *CFR*, Section 226.6(d)

     iii.    Serve food in compliance with applicable California and local health and sanitation requirements

     iv.    Comply with civil rights requirements

     v.    Maintain complete and appropriate records on file

     vi.    Claim reimbursement only for eligible meals

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

---

**Requirements for Day Care Home Program Operators Participation in the Child and Adult Care Food Program**

---

The Program Operator shall comply with all provisions of 7 *CFR*, Part 226, and all requirements developed pursuant to and imposed by these regulations which incorporate the Program Operator's state agency information technology system application packet, management plan, federal procurement standards; as well as applicable provisions of 2 *CFR*, Part 200; 7 *CFR*, parts 15, 15a, 15b; USDA guidance; and CDSS management bulletins, and the most recent revision of FNS Instruction Number 796-2 hereby incorporated by reference.

**The Program Operator Agrees to:**

1. Administer the program from an ongoing office site located within the state of California and staffed by permanent administrative personnel during normal business hours to adequately meet the needs of the day care homes. [7 *CFR*, Section 226.2 and FNS Instruction 788-16]

2. Notify the CDSS in advance of days the Program Operator's office will be closed. [7 *CFR,* Section 226.6(b)(4)(iii)]

3. Comply with, and meet all requirements in, 7 *CFR*, Part 226, the CACFP regulations, this Agreement with the CDSS, and all departmental guidance provided.

4. Include a nondiscrimination statement in all program materials and display the civil rights poster. [7 *CFR*, Section 226.6(b)(1)(iii)] [7 *CFR*, Section 226.6(b)(1)(xviii)(B)(*3*)]

5. New CACFP agencies are still responsible for issuing an initial public media release. The CDSS will issue all subsequent media releases. [7 *CFR*, Section 226.23(d)]

6. Comply with the CACFP Audit Rule; 7 *CFR,* Sections 226.8(a), (b), (c), and (d); the CDSS's policy and guidance; and the most recent revision of USDA, FNS Instruction 796.2.

7. The Program Operator shall not contract for the management of the CACFP. [7 *CFR*, Section 226.15(c)]

8. Submit an annual administrative budget to the CDSS for approval no later than September 1 of each year. [7 *CFR*, Section 226.6(f)(1)(iv)]

9. Retain no more than 30 percent of Federal meal reimbursement, per month, for allowable administrative costs. [7 *CFR*, Section 226.12(a)(3)(iv)]

10. Report actual administrative expenses and income on the monthly claim for reimbursement and maintain documentation supporting such costs. [7 *CFR*, Section 226.13(d)]

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

11. Use interest earned from an interest-bearing account for the enhancement of the program and maintain proper documentation proving its use. [the most recent revision of FNS Instruction 796.2]

12. Maintain a record of the amounts and dates of payments to each site. [7 *CFR*, Section 226.13 and 7 *CFR* 226.10]

13. Per 7 *CFR*, Section 226.14, remit to the CDSS all monies owed within 30 days, (including administrative cash advances) when:

    A.  The Program Operator's agreement or cash advance is canceled; or

    B.  A demand is made by the CDSS and all appeals have been exercised.

14. Remit to the CDSS reimbursement for meals disallowed during an audit or administrative review including the portion retained by the Program Operator for administration. [7 *CFR*, Section 226.14]

15. Reimburse applicable sites for additional meals discovered during an audit or administrative review according to the program requirements. [7 *CFR*, Section 226.6(k)(3)]

16. Recruit only sites that are not operating under another Program Operator. [7 *CFR*, Section 226.18(b)(13)] [7 *CFR*, Section 226.6(b)(1)(xviii)(A)(1)]

17. Accept that a day care home provider may transfer from one Program Operator to another only once every 12 months.

18. Accept only one site transfer from any other Program Operator per month.

19. Recruit sites that are licensed, registered, or government approved. [7 *CFR*, Section 226.6(b)(2)(vii)(A)(1)]

20. Provide access to all approved sites listed on the Schedule A and make available all accounts and records pertaining to the CACFP to representatives of the CDSS, the USDA, the U.S. General Accounting Office, and other authorized agencies upon request, through either announced or unannounced reviews during normal hours of operation. During any such reviews, the representatives of the above cited agencies shall show photo identification that demonstrates they are employees of one of the agencies. [7 *CFR*, Section 226.18(b)(1)]

21. Provide written notification to all sites that they are required to comply with Section 504 of the Rehabilitation Act of 1973 as amended (29 *United States Code* Section 794).

22. Enter into a written agreement (provided by the CDSS) with each site that specifies the rights and responsibilities of the Program Operator and the site as provided by the CDSS, and includes the day care home provider's full name, mailing address, and date of birth. [7 *CFR*, Section 226.6(p)] [7 *CFR*, Section 226.18(b)]

State of California                                      Permanent Single Agreement
Department of Social Services                              CACFP 03 Rev. April 2022
Child and Adult Care Food Program

23. Attend training as mandated by the CDSS. [7 *CFR*, Section 226.16(d)(3)]

24. Certify annually that it is in compliance with the terms and conditions set forth in this Agreement. If the CDSS terminates this Agreement, the Program Operator shall give control of those financial accounts containing CACFP money and all CACFP records to the CDSS. [the most recent revision of FNS Instruction 796.2]

25. Provide an outside employment policy that restricts other employment by Program Operator employees that interferes with an employee's performance of CACFP duties and responsibilities, including outside employment that constitutes a real or apparent conflict of interest. [7 *CFR*, Section 226.6(b)(1)(xvi)]

26. Notify each site of the serious deficiency process for day care home providers, whereby each provider will have the opportunity to correct program deficiencies and appeal the Program Operator's intent to terminate the provider's participation in the program. [7 *CFR*, Section 226.16(l)(3)]

27. Provide to the CDSS, annually, the list of providers categorically certified as Tier I based on CalFresh or SNAP eligibility. [7 *CFR*, Section 226.6(f)(1)(viii)(E)]

28. Record Keeping: As per 7 *CFR*, Section 226.15(e), Program Operators shall establish procedures for, maintain, and make available at CDSS request, the records listed below that provide the basis for claims for reimbursement, audits, and administrative reviews. Failure to keep and maintain required records for each approved site may result in the recovery of all program funds.

   A. Establish procedures to collect, maintain, and update all necessary program records as required. Records shall include:

      i.  Copies of all applications, agreements, and supporting documents submitted to the CDSS

      ii. Documentation pertaining to the enrollment of each child shall include the child's normal days and hours of care and the meals that the child would ordinarily receive. The enrollment document shall be signed by a parent or guardian, and shall be updated annually

      iii. Documentation to be collected annually pertaining to the eligibility of the providers' own children for whom meals are and were claimed

      iv. Copies of all claims for reimbursement submitted to the CDSS

      v.  Receipts for all program payments received from the CDSS

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

vi.    Documentation indicating the number of children in attendance and the number of meals, by type (breakfast, lunch, supper, and snacks), served to enrolled children daily

vii.    Copies of invoices, receipts, and other records required by the CDSS to document:

    (1) Costs charged to the CACFP and
    (2) Income received from the CACFP

viii.    Copies of menus and meal counts for each approved site

ix.    Information on training sessions provided to the sites including dates and locations, as well as topics presented and names of participants

x.    Documentation of site monitoring, showing dates and locations, notations of any problems, and the corrective action prescribed and effected

xi.    Documentation that demonstrates compliance with the reimbursement payment requirements to sites

xii.    Documentation that substantiates the meals claimed both by reimbursement category and by meal type within each category

xiii.    Documentation of annual public media release

xiv.    Documentation that every Tier I eligibility determination based on school free and reduced-price meal eligibility data is certified every five years

xv.    Documentation that every Tier I eligibility determination based on national census data is certified every five years or with the publication of new national census data

xvi.    Documentation that every Tier I eligibility determination based on provider's income is certified annually

xvii.    Verification of each Tier I determination based upon provider's income

xviii.    Any home that does not qualify for Tier I reimbursement rates shall be classified for Tier II reimbursement rates

29. Retain all records and accounts pertaining to the program for a period of three years following the program year (October to September) to which they pertain. If audit findings have not been

State of California                                                  Permanent Single Agreement
Department of Social Services                                        CACFP 03 Rev. April 2022
Child and Adult Care Food Program

resolved, such records and accounts shall be retained beyond the end of the three-year period
until audit issues are resolved and the audit is closed.

The Program Operators are required to adhere to the following Operational Provisions:

1. Meal Service shall comply with 7 *CFR*, Section 226.18, including:

   A. Offer all children in attendance at the day care homes the same meals at no separate
      charge and with no physical segregation or other discrimination because of race, color,
      national origin, sex (including gender identity and sexual orientation), religion, age or
      disability, or political beliefs.

   B. Obtain "Decline Participation" forms for children whose parents decline their participation in
      the CACFP.

   C. Plan and prepare food in amounts that are sufficient to serve each enrolled child one meal
      at each meal service which meets the minimum requirements set forth in the Meal Patterns
      for Infants and Older Children, as prescribed by 7 *CFR*, Section 226.20;

      i.   Serve a reimbursable meal to each eligible child

      ii.  Ensure that the counts at each meal service do not exceed the licensed capacity

      iii. Ensure that the preparation, serving, and storage of foods are carried out in a
           manner that conforms to applicable state and local sanitation laws and regulations

2. To receive reimbursement, Program Operators shall follow current FNS Instruction 796-2 and
   perform the following:

   A. Submit claims based on current eligibility and enrollment information

   B. Claim for reimbursement only meals served that meet the meal pattern component
      requirements in Schedule B (Meal Patterns)

   C. Claim for reimbursement only meals served to eligible children enrolled for care
      participating in the Child and Adult Care Food Program at approved sites

   D. Claim no more than two major meals and one snack or two snacks and one major meal for
      each child

   E. Maintain in and out records for children if shifts of care are provided

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

F. Edit the monthly claims of each sponsored provider before filing the consolidated monthly reimbursement claim. Program Operators are not required to perform an edit check to detect block claims or unannounced follow-up reviews related to block claims

G. Block claiming is defined as a claim for reimbursement submitted by a site in which the number of meals claimed for one or more meal type (breakfast, lunch, snack, or supper) is identical for 15 consecutive operating days within a claiming period

H. Submit claims to the CDSS as soon as possible after provider records have been received and verified in the month following the claim month, but not later than 60 days following the claim month or risk forfeiture of reimbursement for that month

I. Claim meals both by tiering reimbursement category and by meal type within each category

3. For monitoring and training, per 7 *CFR*, Section 226.18, all Program Operators are to provide adequate supervisory and operational personnel for the effective management and monitoring of the program at all sites under the Program Operator's jurisdiction as stated in the Management Plan. At a minimum, the Program Operator shall:

A. Conduct pre-approval visits to each site to discuss CACFP benefits and regulations [7 *CFR*, Section 226.16(d)(1)]

B. Employ the equivalent of one full-time staff person for each 50 to 150 day care homes it sponsors, and employ the equivalent of one full-time staff person for each 25 to 150 centers it sponsors, to perform monitoring (sponsors with less than 50 providers are exempt from this requirement) [7 *CFR*, Section 226.16(b)(1)]

C. Monitor each site at least three times per year, with year defined as a consecutive 12-month period. For new sites, the first visit shall occur within the first four weeks of operation and no more than six months shall elapse between visits. For continuing sites, no more than six months shall elapse between visits [7 *CFR*, Section 226.16(d)(4)(iii)]

D. Ensure that at least two of the three required annual visits are unannounced and one of the unannounced is during a meal service [7 *CFR*, sections 226.16(d)(4)(iii) through (vii)]

E. Train site staff in program duties and responsibilities prior to beginning program operation, with additional training sessions to be held at least once annually [7 *CFR*, Section 226.16(d)(2) and 7 CFR 226.16(d)(3)]

F. Explain the tiering categories and reimbursement process to the providers [7 *CFR*, Section 226.18(b)(11)]

4. The CDSS and the Program Operator mutually Agree, per 7 *CFR* 226.12(a) that Administrative expenses shall not exceed the lesser of:

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

A. Actual expenditures for administering the program; or

B. The amount of administrative costs in the Program Operator 's approved budget; or

C. The sum of the products is obtained by multiplying the sponsoring organization's monthly number of day care homes by the Federally set reimbursement rates in accordance with 7 *CFR* 226.12(a). The Federal Register is used for the most current fiscal year

5. During any fiscal year, administrative payments to a sponsoring organization may not exceed 30 percent of the total amount of administrative payments and food service payments for day care home operations.

**The CDSS Agrees to:**

1. Reimburse the Program Operator for the number of meals served to enrolled children in the sites approved by the CDSS, according to either Tier I or Tier II meal reimbursement rates, depending upon the site's status as either Tier I or Tier II day care homes and the Tier I or Tier II eligibility of the child(ren) enrolled in Tier II homes. [7 *CFR*, Section 226.13]

2. Prohibit the Program Operator from retaining no more than 30 percent of Federal meal reimbursement, per month, for allowable administrative costs. [7 *CFR*, Section 226.12(a)]

3. Notify the Program Operator of any changes in program requirements.

4. Provide the Program Operator with annual information to update and/or renew the program participation.

5. Provide technical and supervisory assistance to the Program Operator.

6. Notify the Program Operator of any serious deficiencies, whereby the Program Operator will have the opportunity to correct the program deficiencies. If the Program Operator's corrective action is unacceptable and results in intent to terminate, the Program Operator will be notified of its appeal rights. [7 *CFR,* Section 226.6(c)(1)(iii)(A)]

---

**Requirements for Program Operator Participation in the Child and Adult Care Food Program – Centers Sponsors**

---

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

The Program Operators, as defined in 7 *CFR*, Section 226.2, shall comply with all provisions of 7 *CFR*, Part 226, and all requirements developed pursuant to and imposed by these regulations which incorporate the Sponsor's state agency information technology system application packet, management plan, federal procurement standards. As well as applicable provisions of 2 *CFR*, Part 200; 7 *CFR*, parts 15, 15a, 15b; USDA guidance; applicable CDE and CDSS policy guidance; and the most recent revision of FNS 796-2 hereby incorporated by reference.

**The Program Operator agrees to:**

1. Administer the program from an ongoing office site staffed by permanent administrative personnel located within the state of California. [7 *CFR*, Section 226.2]

2. All forms of communication available to the public regarding the CACFP must contain the appropriate USDA nondiscrimination statement short version or long version. Agencies must use the long version in all situations except when the long version would alter the nature of the document (i.e., on brochures, flyers, pamphlets, etc.).

3. Comply with the CACFP Audit Rule, 7 *CFR*, Part 226.8(a)–(d), 2 *CFR* Part 200 subpart F, 2 *CFR* parts 400, 415, and 416 and the CDSS's policy and guidance.

4. Annually certify compliance with the terms and conditions set forth in the following certificates: Lobbying; Debarment, Suspension, and Other Responsibility Matters; and Drug-free Workplace Requirements. The certificates are located in CNIPS – CACFP 33 [Section 1352, Title 31 of the U.S. Code, and implemented at 34 *CFR* Part 82; Executive Order 12549, Debarment and Suspension, and implemented at 34 *CFR* Part 85, for prospective participants in primary covered transactions, as defined at 34 *CFR* Part 85, Sections 85.105 and 85.110; Drug-Free Workplace Act of 1988, and implemented at 34 *CFR* Part 85, Subpart F, for grantees, as defined at 34 *CFR* Part 85, Sections 85.605 and 85.610].

5. Accept final administrative and financial responsibility for the food service operations at each center under their operation and employ an adequate number of management and operational personnel to effectively manage the CACFP at its centers. [7 *CFR*, Section 226.6(b)(4)(ii)]

6. Use interest earned from an interest-bearing account for the enhancement of the program and maintain proper documentation proving its use. [The most recent revision of FNS 796-2.]

7. Remit to the CDSS reimbursement for meals disallowed during an audit or Administrative Review (AR) [7 *CFR*, Section 226.14(a)].

8. Use no more than 15 percent (%) of its annual CACFP meal reimbursement for CACFP administrative expenses. This includes, but is not limited to; eligibility determinations, claims preparation, monitoring, and training. [7 *CFR*, Section 226.6(f)(1)(iv)]

State of California                                                    Permanent Single Agreement
Department of Social Services                                          CACFP 03 Rev. April 2022
Child and Adult Care Food Program

9.  Monitor its centers three times per year, with at least two of those visits unannounced and one of the unannounced visits including observation of a meal service. Not more than six months shall elapse between reviews. [7 *CFR*, Section 226.16(d)(4)(iii)]

10. Notify parents of the enrolled children and families/caregivers of enrolled adults of their centers' participation in the CACFP.

11. Provide an outside-employment policy restricts other employment by employees that interferes with an employee's performance of Program-related duties and responsibilities, including outside employment that constitutes a real or apparent conflict of interest.  [7 *CFR*, 226.6(b)(1)(xvi)]

12. Adult agencies only: Provide a community-based group program designed to meet the needs of functionally impaired adults through an individual plan of care. Such a program shall be a structured, comprehensive program that provides a variety of health, social and related support services to enrolled adult participants. [7 *CFR*, Section 226.19a(b)(1)]

13. Child or adult care centers shall have federal, state, or local licensing or approval to provide day care services to participants. Child or adult care centers, which are complying with applicable procedures to renew licensing or approval, may participate in the CACFP during the renewal process, unless the CDSS has information that indicates that renewal will be denied. [7 CFR, Section 226.17(b)(1) and 7 *CFR*, Section 226.19a(b)(3)]

14. The Program Operator is responsible to ensure program compliance for all entities that are part of the legal entity or not part of the legal entity. The Program Operator or sponsoring organization is administratively and fiscally responsible for all sites that are part of the legal entity or not part of the legal entity.

15. Emergency shelters are exempt from licensing/approval requirements contained in this section but shall meet the requirements of paragraph 7 *CFR*, Section 226.22(d)(2) to be eligible to participate in the Program. Independent centers shall submit such documentation to the CDSS on their own behalf. [7 *CFR*, Section 226.6(d)]

16. At-risk afterschool care centers shall comply with licensing requirements set forth in 7 *CFR*, Section 226.17a(d). Emergency shelters shall comply with health and safety requirements set forth in 7 *CFR*, Section 226.6(d).

17. Except for for-profit centers, child and adult care centers shall be public, or have tax exempt status under the *Internal Revenue Code* of 1986. [7 *CFR*, Section 226.17(b)(2)]

18. Nonprofit and public Program Operators shall immediately notify the CDSS of a change in program sponsorship (i.e., placing a child or adult care center under a different sponsor) or change in legal status (i.e., from nonprofit to for-profit). Nonprofit and public Program Operators shall also notify the CDSS of any changes to the nonprofit and public Program Operators responsible principles.

State of California                                    Permanent Single Agreement
Department of Social Services                              CACFP 03 Rev. April 2022
Child and Adult Care Food Program

19. Private for-profit Program Operators shall immediately notify the CDSS of a change in ownership.

20. Each child or adult care center participating in the CACFP shall serve one or more of the following meal types—breakfast; lunch; supper; or snack. Childcare centers and adult day care centers shall not claim reimbursement for more than two meals and one snack, or one meal and two snacks, provided daily to each participant. [7 *CFR*, Section 226.17(b)(3)]

21. At-risk afterschool care centers shall not claim reimbursement for more than one meal and one snack. [7 *CFR*, Section 226.17a(k)]

22. Emergency shelters shall not claim reimbursement for more than three meals, or two meals and one snack. [Section 17(t)(1) of the National School Lunch Act]

23. Nonpricing Program Policy Statement: Offer the same meals to all children or adults in attendance at approved sites with no physical segregation or other discrimination because of race, color, national origin, sex (including gender identity and sexual orientation), religion, age, disability reprisal or retaliation for prior civil rights activity. These meals will be served to all children or adults at no separate charge in all nonpricing programs. All revisions to this policy statement shall be approved by CDSS prior to implementation. Pending approval of a revision to this statement, the existing policy shall remain in effect.

24. Pricing Program Policy Statement: Sign and submit the CDSS Child and Adult Care Food Program F/RP Meal Policy Statement for Pricing Programs or a modified version for CDSS approval. Any revisions to this policy statement shall be approved by CDSS prior to implementation. Pending approval of a revision to this policy statement, the existing policy shall remain in effect.

25. Each child or adult care center participating in the CACFP shall claim only the meal types specified in its approved application in accordance with the meal pattern requirements specified in 7 *CFR*, Section 226.20. Menus and any other nutritional records required by the CDSS shall be maintained to document compliance with such requirements. [7 *CFR*, Section 226.17(b)(4)]

26. For-profit child care centers shall not claim reimbursement for meals served to children in any month in which less than 25 percent of the children in care (enrolled or licensed capacity, whichever is less) were eligible for F/RP meals or were Title XX beneficiaries. However, children who only receive at-risk afterschool snacks or at-risk afterschool meals shall not be included in this percentage. [7 *CFR*, Section 226.17(b)(4)]

27. For-profit adult care centers shall not claim reimbursement for meals served to participants in any month in which less than 25 percent of the enrolled participants were Title XIX or Title XX beneficiaries. [7 *CFR*, Section 226.19a(b)(6)]

28. A child care center with preschool children may also be approved to serve a breakfast, snack, and supper to school-age children participating in an outside-school-hours care program meeting the criteria of 7 *CFR*, Section 226.19(b), which is distinct from its day care program for preschool-age

State of California                                Permanent Single Agreement
Department of Social Services                      CACFP 03 Rev. April 2022
Child and Adult Care Food Program

children. The CDSS may authorize the service of lunch to such participating children who attend a school that does not offer a lunch program, provided that the limit of two meals and one snack, or one meal and two snacks, per child per day is not exceeded.

29. A child care center with preschool children may also be approved to serve a snack or meal to school-age children participating in an at-risk afterschool care program meeting the requirements of 7 *CFR*, Section 226.17a, that is distinct from its day care program for preschool children, provided that the limit of two meals, and one snack, or one meal and two snacks, per child per day is not exceeded.

30. A child or adult care center may use existing school food service facilities or obtain meals from a school food service facility, and the pertinent requirements shall be addressed in a written agreement between the child or adult care center and school. The center shall maintain responsibility for all applicable CACFP requirements set forth in 7 *CFR*, Part 226. [7 *CFR*, Section 226.19(b)(8)]

31. Each child or adult care center, except at-risk afterschool care centers and emergency shelters, shall collect and maintain documentation of the enrollment of each participant, including information used to determine eligibility for F/RP meals in accordance with 7 *CFR*, Section 226.23(e)(1). For children enrolled in a childcare center, documentation of enrollment shall be updated annually, signed by a parent or legal guardian, and include information on each child's normal days and hours of care and the meals normally received while in care. [7 *CFR*, Section 226.15(e)(2)]

32. Sponsored child or adult care sites shall promptly inform the sponsoring organization about any change in its licensing or approval status. Changes may include but is not limited to: dates and times of meals service, months of service, staffing information and all other information pertinent to the implementation of the CACFP program.

33. Comply with cost principles and considerations affecting allowability of costs, and administrative requirements, in accordance with 2 *CFR*, Part 200, subparts D and E; most recent revision of FNS 796.2 section VIII, federal regulations, and all applicable federal and state policies. The Program Operator agrees to account for costs correctly and maintain records with sufficient supporting documentation to demonstrate that costs claimed have been incurred, are allocable to the CACFP, and comply with state agency financial management requirements and all applicable CACFP regulations and policies. Costs that are not properly documented and recorded pursuant to the above are unallowable

34. Recording all costs through GAAP: Accounting for all costs of operation, describes in-kind services and contributions. The USDA has defined in-kind services as costs that are actual cash expenditures that have been paid by the Program Operator, even though the CACFP may not have been billed for the CACFP share of the cost. These costs shall be accounted for in the Program Operator's financial records [MB CACFP-06-2017]

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

35. Each outside-school-hours care center participating in the Program shall claim only the meal types specified in its approved application and served in compliance with the meal pattern requirements of 7 *CFR*, Section 226.20 Reimbursement may not be claimed for more than two meals and one snack provided daily to each child or for meals served to children at any one time in excess of authorized capacity. For-profit centers may not claim reimbursement for meals served to children in any month in which less than 25 percent of the children in care (enrolled or licensed capacity, whichever is less) were eligible for free or reduced price meals or were title XX beneficiaries. [7 *CFR*, Section 226.19(b)(5)]

36. Each sponsoring organization shall provide adequate supervisory and operational personnel for the effective management and monitoring of the program at all facilities it sponsors. Each sponsoring organization shall employ monitoring staff sufficient to meet the requirements of paragraph (b)(1). [7 *CFR*, Section 226.16(d)]

37. Annual training on Program duties and responsibilities to responsible principles; for School Food Authorities, this shall be the highest-ranking individual who has administrative and or fiscal control over the institution, e.g. the Superintendent and or the Chief Business Officer (CBO), from all sponsored facilities prior to the beginning of Program operations. Training shall include instruction, appropriate to the level of staff experience and duties, on the Program's meal patterns, meal counts, claims submission and review procedures, recordkeeping requirements, and reimbursement system. Attendance by the responsible principles, as defined by the CDSS, is mandatory [7 *CFR*, Section 226.16(d)(2)].

38. Additional mandatory training sessions for responsible principles or highest-ranking official(s) from all sponsored childcare and adult day care facilities not less frequently than annually. At a minimum, such training shall include instruction, appropriate to the level of staff experience and duties, on the Program's meal patterns, meal counts, claims submission and review procedures, recordkeeping requirements, and reimbursement system. Attendance by the responsible principles, as defined by the CDSS, is mandatory. [7 *CFR*, Section 226.16(d)(3)].

39. Renewing Program Operators: The Healthy, Hunger-Free Kids Act of 2010 (Act) requires state agencies to have permanent operating agreements with CACFP sponsors. 7 *CFR*, sections 226.6(f)(1) and 226.6(f)(3) also require agencies to submit documents annually to the CDSS and verify that all information previously provided to the CDSS is current and correct. Therefore, agencies that fail to submit these annual documents are not in full compliance with 7 *CFR,* Part 226.6(b)(2).

   A. The CDSS shall terminate the operating agreements if they are not "renewed" by October 31 of each year. Program Operators shall either submit the required documents, withdraw from the CACFP, or be terminated for non-renewal.

   B. The Program Operator shall submit a complete annual update application packet via the CDSS information technology system. The CDSS will declare any Program Operator that has not submitted complete annual update documents by October 1, seriously deficient by

State of California                                                          Permanent Single Agreement
Department of Social Services                                                  CACFP 03 Rev. April 2022
Child and Adult Care Food Program

November 1. For the CDSS staff to have sufficient time to review submitted annual update documents, all Program Operators shall ensure that they submit their annual update application packet electronically via the CDSS information technology system by October 1. Annual update documents shall not be considered submitted to CDSS until CDSS receives them through its information technology system, e-mail, or postal mail. If a Program Operator does not submit the required annual update, the CDSS shall continue to pay all prior federal fiscal year valid claims. The Program Operator will not be paid for any meals served after termination.

40. The CDSS has the right to terminate the agreement for cause or for convenience, subject to 7 *CFR*, Section 226.6. In the event of termination, Program Operators shall comply with the CDSS's time limit for submission of claims for reimbursement.

41. Any changes to the Program Operator's state agency information technology system application, which include but are not limited to, dates and times of meals service and type of meals served, shall be submitted to the CDSS in the month of, or in the preceding months, for which the change will take into effect. The USDA, FNS Instruction 796.2, Revision 4 and 2 *CFR*, Part 200, subparts D and E establish guidelines for the financial management of CACFP reimbursement funds. These guidelines include, but are not limited to, information on CACFP allowable costs, and the level of approval required for such costs. All costs, including food, require prior approval before the cost is incurred. Some expenses require specific prior written approval by the CDSS or the FNS, depending on the nature of the cost. The CDSS may not pay for any claims for sites that served meals outside the month that they were approved for. [USDA, the most recent revision of FNS 796.2. and Title 2 *CFR* Part 200]

42. Sponsoring organizations, as defined in 7 *CFR*, Section 226.2, shall comply with additional provisions set forth in 7 *CFR*, Section 226.16.

43. Program Operators shall purchase CACFP food, supplies, equipment, and other goods and services in accordance with the federal procurement standards and instructions set forth in 2 *CFR*, sections 200.318–326, 7 *CFR*, Section 226.22, and the most recent revision of FNS 796.2.

44. The CDSS shall not approve any application submitted by a Program Operator on behalf of a facility where either the facility or any of its principals are on the National Disqualified List. [7 *CFR*, Section 226.6(b)(1)(xii)]

45. Enter into a written agreement with each unaffiliated site that specifies the rights and responsibilities of the Program Operator and the site, and submits to the CDSS, the unaffiliated site responsible principle(s) full name, mailing address, and date of birth. The Sponsoring organization shall assume all responsibility for the unaffiliated site for the operation of the CACFP. Any fiscal or corrective action against the unaffiliated site shall be the responsibility of the Sponsoring organization.

State of California                                                    Permanent Single Agreement
Department of Social Services                                         CACFP 03 Rev. April 2022
Child and Adult Care Food Program

**The CDSS Agrees to:**

1. Reimburse the Program Operator in accordance with all federal requirements.

2. Notify the Program Operator of any changes in program requirements.

3. Provide annual information to update and/or renew the program.

4. Provide technical assistance to the Program Operator.


## CACFP Requirements for All Program Operators

1. **Record Keeping** is the basis for all claims for reimbursement.  Maintaining appropriate records to document compliance with CACFP requirements, including budgets, accounting records, approved budget amendments, and, if a sponsoring organization, management plans and appropriate records on facility and site operations, shall result in the recovery of program funds; [7 *CFR*, Section 226.6(b)(1)(xviii)(C)(3)].

   A. Each Program Operator shall establish procedures to collect and maintain all program records required under this part, as well as any records required by the CDSS. Failure to maintain such records shall be grounds for the denial of reimbursement for meals served during the period covered by the records in question and for the denial of reimbursement for costs associated with such records [7 *CFR*, 226.15(e)]

   B. Copies of all applications, agreements, schedules, and supporting documents submitted to the CDSS

   C. Enrollment documents for each child or adult. In child care centers (excluding after-school centers, emergency shelters, and outside-school-hours centers), each child's enrollment document shall be signed by a parent or guardian and state the child's normal days and hours of child care and the meals that the child ordinarily would receive. Centers shall update this information annually

   D. Copies of all claims for reimbursement submitted to the CDSS

   E. Receipts for all program payments received from the CDSS

   F. Daily records indicating the time of meal service, type of meal (breakfast, lunch, supper, and snacks), number of children or adults in attendance and the number of meals served to enrolled children or adults

   G. Copies of menus and any other food service records required by the CDSS for each approved site

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

H. Information on training sessions provided to the sites including dates and locations, as well as topics presented and names of participants

I. A record of site monitoring, showing dates and locations of the sites, notations of any problems, and the corrective action prescribed and implemented

J. A copy of the annual media release

K. Program Operators shall maintain all CACFP records for a period of three years following the federal fiscal year to which they pertain, unless audit or investigative findings have not been resolved, in which case the records shall be retained until all issues raised by the audit or investigation have been resolved. All accounts and records pertaining to the Program shall be made available, upon request, to representatives of the CDSS, and of the U.S. Government Accountability Office for audit or review, at a reasonable time and place. [7 *CFR*, Section 226.10(d)]

2. **Meal Service:**

A. Offer the same meals to all children or adults in attendance at approved sites with no physical segregation or other discrimination because of race, color, national origin, sex (including gender identity and sexual orientation), religion, age, or disability. These meals will be served to all children or adults at no separate charge in all nonpricing programs [7 *CFR*, Section 226.23(b)]

B. Plan and prepare food in amounts that are sufficient to meet the minimum requirements set forth in the Meal Patterns for Infants and Older Children or Adults, as prescribed by 7 *CFR*, Part 226.20 at each meal service for each participant

C. Ensure that the preparation, serving, and storage of foods are carried out in a manner that conforms to applicable state and local sanitation laws and regulations [7 *CFR*, Section 226.20(l)]

D. All sites shall be approved prior to the month of meal service [7 *CFR*, Section 226.6(b)(1)(xviii)(C)(5)]

3. **Reimbursement:**

A. Edit the monthly meal claims of each sponsored site before filing the consolidated monthly reimbursement claim. Program Operators are not required to perform an edit check to detect block claims or unannounced follow-up reviews related to block claims [7 *CFR*, Section 226.11(b)(1)];

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

B. Submit monthly claims based on current eligibility and enrollment information as required by the claiming method [7 *CFR*, Section 226.17(b)(8)]

C. Claim for monthly reimbursement only meals served that meet the meal pattern requirements [7 *CFR*, Section 226.6(b)(1)(xviii)(c)(5)(vi)]

D. Claim for monthly reimbursement only meals served to eligible children or adults enrolled for care at approved sites; [CACFP 04 (Rev. 08/2019) Page 6]

E. At-risk only: Claim for reimbursement only snacks served to eligible children enrolled for care at approved sites [7 *CFR*, Section 226.11(c)(2)]

F. Private for-profit Child Care Agencies only: Claim monthly meal reimbursement only for the meals served at sites that meet the 25% threshold for either free or reduced-price meal eligibility or subsidized care [7 *CFR*, Section 226.10(c)]

G. Agencies shall submit a claim for reimbursement no later than 60 calendar days after the month claimed. Example: A claim for June shall be submitted by August 29, 60 days after the month of June. All claims are submitted through the CDSS information technology system [7 *CFR*, Section 226.10(e)]

H. Adult only: Make no claim to the CDSS for any meal supported by Part C of Title III of the Older Americans Act of 1965 [7 *CFR*, Section 226.19a(b)(6)]

I. Time of meal service: State agencies may require any Program Operator to allow a specific amount of time to elapse between meal services or require that meal services not exceed a specified duration. [7 *CFR*, Section 226.20(k)]

4. **Time periods for snack and meal services:**

A. At-risk afterschool snack: When school is in session, the snack shall be served after the child's school day. With State agency approval, the snack may be served at any time on weekends and vacations during the regular school year. Afterschool snacks may not be claimed during summer vacation, unless an at-risk afterschool care center is in the attendance area of a school operating on a year-round calendar [7 *CFR*, Section 226.17a(m)]

B. At-risk afterschool meals: When school is in session, the meal shall be served after the child's school day. With State agency approval, any one meal may be served (breakfast, lunch, or supper) per day on weekends and vacations during the regular school year. Afterschool meals may not be claimed during summer vacation, unless an at-risk afterschool care center is in the attendance area of a school operating on a year-round calendar [7 *CFR*, Section 226.17a(m)]

State of California                                    Permanent Single Agreement
Department of Social Services                         CACFP 03 Rev. April 2022
Child and Adult Care Food Program

5. **Monitoring and Training:**

   A. Provide adequate supervisory and operational personnel for the effective management and monitoring of the program at all sites under the Program Operator's jurisdiction as stated in the Management Plan. At a minimum, the Program Operator shall:

      i. Conduct preapproval visits to each new site to discuss the Child and Adult Care Food Program benefits and regulations [7 *CFR*, Section 226.6(d)(1)]

      ii. Assess each site's compliance with program requirements, including the reconciliation of meal counts over a five-day period [7 *CFR*, Section 226.16(d)(4)(i)]

      iii. Train site staff in program duties and responsibilities prior to beginning program operation, with additional training sessions to be held at least once annually [7 *CFR* Section 226.6(b)(1)(xviii)(C)(i)]

6. **Procurement:**

   A. Program Operators that contract with another Program Operator shall ensure that the food service contract contains the provisions specified in 2 *CFR*, Part 200 and 7 *CFR*, sections 226.21 and 226.22.

   B. Program Operators that contract with a non-Program Operator shall comply with the bid and contractual requirements of 2 *CFR*, Part 200; 7 *CFR*, sections 226.21 and 226.22 if the Program Operator contracts with a food service management company as defined in 7 *CFR*, Section 226.2; and ensure that the company complies with the meal pattern requirements and maintains menu records and food purchase records in accordance with applicable program guidelines.

---

**Food Service Management Companies (if applicable):**

---

1. Any Program Operator may contract with a Food Service Management Company (FSMC). A Program Operator which contracts with a food service management company shall remain responsible for ensuring that the food service operation conforms to its agreement with the CDSS. [7 CFR, Section 226.21(a)]

2. Program Operator shall comply with existing Federal, State, and local procurement requirements when obtaining the services of an FSMC. All procurements of meals from food service management companies shall adhere to procurement standards set forth in 7 CFR sections 226.20; 226.21;226.22 and at 2 CFR, Part 200, subparts D and E, and contract provisions in Appendix II to 2 CFR Part 200.

3. A Program Operator shall not contract with an FSMC to manage its food service operation.

State of California                                                                     Permanent Single Agreement
Department of Social Services                                                          CACFP 03 Rev. April 2022
Child and Adult Care Food Program

4.  All proposed contracts shall be publicly announced at least once 14 calendar days prior to the opening of bids. The institution shall also provide notice to the State Agency. The announcement and notice shall include the time and place of the bid opening. [7 CFR, Section 226.21(a)(1)-(2)]

5.  The invitation to bid shall not provide for loans or any other monetary benefit or terms or conditions to be made to Program Operators by food service management companies. [7 CFR, Section 226.21(a)(3)]

6.  Nonfood items shall be excluded from the invitation to bid, except where such items are essential to the conduct of the food service. [7 CFR, Section 226.21(a)(4)]

7.  The invitation to bid shall not specify special meal requirements to meet ethnic or religious needs unless special requirements are necessary to meet the needs of the participants to be served. [7 CFR, Section 226.21(a)(5)]

8.  The bid shall be publicly opened. [7 CFR, Section 226.21(a)(6)]

9.  All bids totaling $50,000 or more shall be submitted to the CDSS for approval before acceptance. All bids shall be submitted to the CDSS for approval before accepting a bid which exceeds the lowest bid. State agencies shall respond to any request for approval within 10 working days of receipt. [7 CFR, Section 226.21(a)(7)]

10. The Program Operator shall inform the CDSS of the reason for selecting the chosen FSMC . CDSS may require Program Operators to submit copies of all bids submitted under this section. [7 CFR, Section 226.21(a)(8)]

11. The Program Operator and the FSMC shall enter into a standard contract as required by 7 CFR Section 226.6(i). However, public Program Operators may, with the approval of the CDSS, use their customary form of contract if it incorporates the provisions of  Section 226.6(i). [7 CFR, Section 226.21(b)]

12. A copy of the contract between each Program Operator and FSMC shall be submitted to the CDSS prior to the beginning of the contract term. [7 CFR, Section 226.21(c)]

13. Each proposed additional provision to the standard form of contract shall be submitted to the CDSS for approval. [7 CFR, Section 226.21(d)]

14. An FSMC may not subcontract for the total meal, with or without milk, or for the assembly of the meal. [7 CFR, Section 226.21(e)]

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

---

## Equal Employment Opportunity Clause

---

The Program Operator agrees that:

1. It will not discriminate against any employee because of race, color, national origin, sex (including gender identity and sexual orientation), age, or disability. The Program Operator will take affirmative action to assure that applicants are employed, and that employees are treated during employment, without regard to their race, color, national origin, sex (including gender identity and sexual orientation), religion, age, disability, political beliefs, sexual orientation, or marital or family status. Such action shall include, but not be limited to the following: employment upgrading, demotion, or transfer; recruitment, or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Program Operator agrees to post, in conspicuous places available to employees and applicants for employment, notices to be provided by the CDSS setting forth the provisions of this nondiscrimination clause.

2. The Program Operator will, in all solicitations or advertisements for employees placed by or on behalf of the Program Operator, state that all qualified applicants will receive consideration for employment without regard to race, color, national origin, sex (including gender identity and sexual orientation), age, or disability.

3. The Program Operator will send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the CDSS, advising the labor unions or workers' representative of the CDSS's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

4. The Program Operator will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

5. The Program Operator will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts by the USDA, the Secretary of Labor, or the CDSS for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

6. In the event of the Program Operator's noncompliance with the nondiscrimination clauses of this PSA, as it relates to CACFP expenses, the agreement may be canceled, terminated, or suspended in whole, or part and the Program Operator may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as rule, regulations, or order of the Secretary of Labor, or as otherwise provided by law.

State of California                                              Permanent Single Agreement
Department of Social Services                                    CACFP 03 Rev. April 2022
Child and Adult Care Food Program

7.  The Program Operator will include the provisions of items (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued

8.  Pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The Program Operator will take such action with respect to any subcontract or purchase order as the USDA or CDSS may direct as a means of enforcing such provision, including sanctions for noncompliance; provided, however that in the event the Program Operator becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the USDA or CDSS, the Program Operator may request the United States or the CDSS to enter into such litigation to protect the interests of the United States.

## Certification Regarding Lobbying

This section is applicable to grants, subgrants, cooperative agreements, and contracts exceeding $100,000 in federal funds. Submission of this certification is a prerequisite for making or entering into this transaction and is imposed by Title 31, *United States Code* Section 1352. This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each.

No federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of a federal contract, the making of a federal grant, the making of a federal loan, the entering into a cooperative agreement, and the extension, continuation, renewal, amendment, or modification of a federal contract, grant, loan, or cooperative agreement.

If any funds other than federally appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or any employee of a member of Congress in connection with this federal grant or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, Disclosure Form to Report Lobbying, in accordance with its instructions.

The language of this certification will be included in the award documents for all covered subawards exceeding $100,000 in federal funds at all appropriate tiers and which all subrecipients shall certify and disclose accordingly.

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

## Certification Regarding State and Federal Drug-free Workplace Requirements

**Grantees Other Than Individuals**

As required by Section 8355 of the California *Government Code* and the Drug-free Workplace Act of 1988, and implemented per 2 CFR, Part 182, for grantees, as defined at 2 CFR, Part 182, Subpart B:

1.  The applicant certifies that it will provide a drug-free workplace by:

    A.  Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition.

    B.  Establishing an ongoing, drug-free awareness program to inform employees about:

        i.   The dangers of drug abuse in the workplace

        ii.  The grantee's policy of maintaining a drug-free workplace

        iii. Any available drug counseling, rehabilitation, and employee assistance programs

        iv.  The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace

    C.  Requiring that each employee engaged in the performance of the grant be given a copy of the statement required by Paragraph (1).

    D.  Notifying the employee in the statement required by Paragraph (1) that, as a condition of employment under the grant, the employee will:

        i.   Abide by the terms of the statement

        ii.  Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction

    E.  Notifying the Program Operator in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees shall provide notice, including position title, to every grant officer or other designee. Notice shall include the identification number(s) of each affected grant.

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

F.  Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted:

   i.  Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended

   ii.  Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state, or local health, law enforcement, or other appropriate agency

G.  Making a good faith effort to continue to maintain a drug-free workplace through implementation of all paragraphs.

**Grantees Who Are Individuals**

As required by Section 8355 of the California Government Code and the Drug-free Workplace Act of 1988, and implemented per 2 CFR, Part 182, for grantees, as defined per 2 CFR, Part 182, Subpart C:

1.  As a condition of the grant, I certify that I will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity with the grant.

2.  If convicted of a criminal drug offense resulting from a violation occurring during the conduct of any grant activity, I will report the conviction to every grant officer or designee, in writing, within 10 calendar days of the conviction. Notice shall include the identification number(s) of each affected grant.

---

**Certification Regarding Debarment, Suspension, and Other Responsibility Matters**

As required by Executive Order 12549, Debarment and Suspension, and implemented per 2 CFR, Part 180, for prospective participants in primary covered transactions, as defined per 2 CFR, Section 180.970:

1.  The applicant (Program Operator) certifies that it and its principals:

   A.  Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any federal department or agency

   B.  Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

local) transaction or contract under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property

C. Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state, or local) with commission of any of the offenses enumerated in paragraph (2)(b) of this certification

D. Have not within a three-year period preceding this application had one or more public transactions (federal, state, or local) terminated for cause or default

2. Where the applicant is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this application.

---

## Termination

1. The CDSS has the right to terminate the agreement for cause or for convenience, subject to 7 *CFR* Section 226.6.

2. The CDSS has the right to immediately terminate the agreement for serious deficiency(ies), if these serious deficiency(ies) constitute an imminent threat to the health or safety of participants, or the Program Operator has engaged in activities that threaten the public health or safety [7 *CFR*, Section 226.6(c)(5)]

3. The CDSS shall terminating a Program Operator's agreement if the Program Operator becomes disqualified by another State agency or FNS [7 *CFR*, section 226.6(k)(3)(5), 226.6(c)(3)(i), 226.6(c)(6)(G).

4. The CDSS shall initiate termination of this agreement and follow applicable procedures if it determines that the institution has committed one or more serious deficiencies in 7 *CFR* Section 226.6(c)(2)(ii) and 7 *CFR* Section 226.6(c)(3)(ii). CDSS's denial of the Program Operator 's application, the proposed termination of the Program Operator 's agreement and the proposed disqualification of the Program Operator and the responsible principals and responsible individuals [7 *CFR*, Section 226.6(c)(2)(iii) and 7 *CFR*, Section 226.6(c)(3)(iii)]

5. The CDSS shall initiate termination of this agreement and follow applicable procedures if state or local health or licensing officials have cited the Program Operator for serious health or safety violations pursuant to 7 CFR Section 226.6(c)(5)(i).

6. The CDSS shall initiate termination of this agreement if it determines that the institution has knowingly submitted a false or fraudulent claim pursuant to 7 CFR Section 226.6(c)(5)(ii).

State of California                                        Permanent Single Agreement
Department of Social Services                            CACFP 03 Rev. April 2022
Child and Adult Care Food Program

7.  The CDSS shall terminate this agreement if the institution fails to fully and permanently correct, within the allotted time, any serious deficiency(ies) identified by the FNS. 7 CFR Part 226.6(c)(6)(ii)(A)(4).

State of California
Department of Social Services
Child and Adult Care Food Program

Permanent Single Agreement
CACFP 03 Rev. April 2022

This PSA constitutes the entire agreement between the parties. No waiver, consent, modification, or change of terms of this PSA shall bind either party unless in writing and signed by both parties. The program operator, by the signature of its authorized representative, hereby acknowledges that they have read this PSA, understand it, and agree to be bound by its terms and conditions.

| Signature of Authorized Official or Designated Representative: | Date: 10-11-23 |
|---|---|
| *Ronald J. Wade* (signature) | |
| **Printed Name of Authorized Official or Designated Representative:** Ronald J. Wade | Title: CEO PASTOR |

| Phone Number: [redacted] | Fax Number: N/A | Email Address: [redacted] |
|---|---|---|

| Contact Person (if different from above): | Phone Number: | Email Address: |
|---|---|---|

**ON BEHALF OF THE STATE AGENCY:**
For the State of California, Department of Social Services
Child and Adult Care Food Program Branch:

| Signature: **Jeannine Cook** | Title: SSMI | Date: October 24, 2023 |
|---|---|---|
| | Digitally signed by Jeannine Cook Date: 2023.10.24 09:22:01 -07'00' | |

32

State of California
Department of Social Services
Child and Adult Food Care Program

Addendum to
Permanent Single Agreement
CACFP 03 Rev. April 2022

# Addendum

Notwithstanding any provision in this PSA to the contrary, CDSS acknowledges that consistent with 7 C.F.R. 226.25(b), the only nondiscrimination laws and provisions applicable to Dayspring's participation in the program are those identified in 7 C.F.R. 226.6(b)(4)(ii). CDSS further acknowledges that Dayspring is an educational institution which is controlled by a religious organization pursuant to 20 U.S.C. § 1681(a)(3) and that Dayspring may claim an exemption from Title IX to the extent allowed by 20 U.S.C. § 1681(a)(3).